# Illinois Official Reports

## Appellate Court

---

**CitiMortgage, Inc. v. Sharlow, 2014 IL App (3d) 130107**

---

| | |
|---|---|
| Appellate Court Caption | CITIMORTGAGE, INC., Assignee of Mortgage Electronic Registration Systems, Inc., as Nominee for Draper and Kramer Mortgage Corporation, Plaintiff-Appellee, v. SHERRIE L. SHARLOW, Defendant-Appellant (American General Financial Services of Illinois, Inc., Under Mortgage Recorded as Document Number R2006087225; and Marquette's Estates Homeowners Association, Defendants). |
| District & No. | Third District<br>Docket No. 3-13-0107 |
| Filed | January 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's petition under section 2-1401 of the Code of Civil Procedure seeking to modify the trial court's order confirming the foreclosure and the sale of defendant's property based on the allegations that a surplus existed and that defendant was entitled to the surplus was affirmed on appeal, since the discrepancy that gave rise to defendant's claims arose from interest that accrued from the foreclosure judgment to the date of the sale and postjudgment fees, costs, and advances to which plaintiff was entitled under the circumstances of the case. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 09-CH-6246; the Hon. Richard J. Siegel, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Lloyd Brooks (argued) and Charles Howell, both of Consumer Legal Group, P.C., of Matteson, for appellant.

Ryan M. Holz (argued), J. Matthew Goodin, and Hugh S. Balsam, all of Locke Lord LLP, of Chicago, for appellee.

Panel

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice O'Brien dissented, with opinion.

**OPINION**

¶ 1     About 22 months after the judicial foreclosure sale of her property was confirmed by the trial court, defendant, Sherrie L. Sharlow, filed a petition under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2012)) to modify the order confirming the sale, alleging that a surplus existed from the sale of her property and that she was entitled to that surplus. Plaintiff, the mortgagee that had foreclosed upon the property and that had purchased the property at the sheriff's sale, opposed the petition, claiming that no surplus existed and that the unallocated amount, over $10,000, was attributable to accrued postjudgment interest and additional costs and advances that plaintiff was due. Following a hearing, the trial court denied defendant's section 2-1401 petition. Defendant appeals. We affirm the trial court's judgment.

¶ 2                                          FACTS

¶ 3     Defendant owned certain real property in Romeoville, Will County, Illinois. The property had a mortgage on it, upon which defendant defaulted. Plaintiff received an assignment of the mortgage and later, in December 2009, filed a complaint to foreclose upon the mortgage. During the foreclosure proceedings, defendant was personally served, did not appear, and was eventually defaulted. On February 25, 2010, the trial court entered a judgment of foreclosure and order of sale of the property (collectively referred to as the judgment, the judgment of foreclosure, or the foreclosure judgment). The judgment listed the total amount of indebtedness as $208,189.93, which included principal of $183,786.61; accrued interest of $13,042.15; and certain fees, costs, and advances of $11,361.17. Included in the total amount of the indebtedness listed was plaintiff's reasonable attorney fees of $1,125. In addition, the foreclosure judgment provided that plaintiff was entitled to collect any nonreimbursed postjudgment costs that it incurred in connection with the sale of the property and the perfection of the certificate of sale and was also entitled to collect postjudgment interest of 9% per year from the date of the foreclosure judgment until the date of sale. Furthermore, the

foreclosure judgment contained language pursuant to Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006) that there was no just reason to delay enforcement or appeal of the judgment.

¶ 4    The redemption period expired on June 27, 2010. On August 25, 2010, the property was sold at a sheriff's sale. Prior to the sale, a notice was mailed to defendant, although there is no indication in the record as to whether that notice was received. Notice was also given by publication, and a certificate of publication was filed in the trial court. Plaintiff purchased the property at the sale with a winning bid of $219,624.17 and later assigned the certificate of sale to the United States Department of Housing and Urban Development (HUD). The sheriff's report from the sale indicated that the money received was to be distributed as follows: $15 to the clerk of the court; $1,146.73 to the sheriff's office for various fees, commissions, and expenses; $25.75 to the recorder of deeds; and the remaining balance of $218,436.69 to plaintiff, which included attorney fees of $1,125 per the judgment of foreclosure and postjudgment advances of $1,006.55.

¶ 5    Plaintiff moved to confirm the sale and provided notice by mail to defendant, although there is no indication in the record as to whether that notice was received. On October 21, 2010, an order was entered confirming the sale and approving the disbursement of the proceeds as provided for in the sheriff's report. The order indicated that the trial court found that there was no surplus or deficiency from the sale and that the proceeds of the sale were sufficient to pay the amount due to plaintiff in full. The order also contained a Rule 304(a) finding that there was no just reason to delay enforcement or appeal of the order. After the sale was confirmed, the sheriff issued a deed to the subject property to HUD on January 3, 2011, and HUD later recorded the deed on March 25, 2011.

¶ 6    On August 9, 2012, defendant filed a section 2-1401 petition to modify the order confirming the sale.[1] In the petition, defendant alleged that she was initially unaware that the property had been sold; that during the spring and summer of 2010, she had participated in loan modification discussions with plaintiff and had obtained permission to complete a short sale of the property; that she had contacted a real estate agent in July 2010 to list the property and was later told by the agent that the property had been sold; that upon inquiring further, defendant was assured by plaintiff that no sale had been conducted; that an examination of the sheriff's report and the order confirming the sale showed that there was a surplus of over $10,000 from the sale of the subject property; that despite that surplus, the order confirming the sale incorrectly stated that there was no surplus or deficiency; that defendant was not notified of the surplus or aware of the sale or the surplus; that sometime later, defendant received a federal income tax notice relating to the sale of the subject property; and that as a result of the federal tax notice, defendant was required to amend her tax filings and to pay income tax on a surplus from the sale, which she never received. Defendant also alleged that because her petition was in the nature of a bill of review to correct an obvious legal error, she was not required to establish due diligence. Defendant attached to her petition an affidavit in

---

[1]It appears that the same section 2-1401 petition was filed again in the trial court on October 5, 2012.

which she attested to the facts set forth in the petition. Defendant also attached a copy of the tax notice she received.

¶ 7    Plaintiff filed a response and opposed the petition. In its response, plaintiff alleged that defendant had failed to show due diligence, that no surplus had been generated, and that the unallocated discrepancy in the amount was attributable to accrued interest of $9,240.21 and additional postjudgment fees, costs, and advances of $1,006.55 to which plaintiff was entitled. Plaintiff attached to the response an itemized list of its fees, costs, advances.

¶ 8    Defendant filed a reply and asserted that she had filed the section 2-1401 petition within a reasonable time after she had learned that a sale of the property had supposedly provided her with taxable income; that she was not required to establish due diligence since she was only raising errors of law and other matters appearing of record; that plaintiff was not allowed to collect postjudgment interest under the law; that plaintiff could not explain away the surplus or why it reported a surplus to the Internal Revenue Service; and that plaintiff's explanation included additional prejudgment fees, costs, and advances of $1,521.50 that were not made a part of the record until plaintiff responded to the petition and postjudgment interest of $9,240.21 that was not permitted under the law.[2]

¶ 9    A hearing was held on the petition over two days in November 2012 and January 2013. No evidence was presented at the hearing, other than the information from the sheriff's files in the case, which had been requested by the trial court. After listening to the arguments of the attorneys, the trial court found that defendant was not required to establish due diligence but ultimately denied defendant's section 2-1401 petition. Defendant appealed.

¶ 10                                         ANALYSIS

¶ 11    Defendant argues on appeal that the trial court erred in finding that there was no surplus from the sheriff's sale of the property and in denying on that basis defendant's section 2-1401 petition to modify the order confirming the sale. Defendant asserts that a surplus existed and that her petition should have been granted because the unallocated amount in the sheriff's report at the confirmation hearing could not have been attributed to plaintiff's postjudgment interest and costs since postjudgment interest was not allowable under the law and since plaintiff presented no evidence as to any additional costs that it had incurred. Defendant asks, therefore, that we reverse the trial court's order dismissing or denying her section 2-1401 petition and that we remand this case for further proceedings, which would include the trial court issuing the surplus amount to defendant.

¶ 12    Plaintiff argues that the trial court's ruling was proper and should be affirmed. In support of its argument, plaintiff asserts that: (1) defendant's petition was barred as a matter of law

_____

[2]In calculating the amount that plaintiff received from the sale, it appears that defendant counted the amount of plaintiff's attorney fees twice. That amount was already included in the total amount of the indebtedness listed in the foreclosure judgment. Thus, we believe that the two amounts that plaintiff received that are in dispute in this appeal are $9,240.21 in postjudgment interest and $1,006.55 in postjudgment costs and advances. Other than when referencing defendant's argument on appeal, we will use those two amounts throughout this opinion as the amounts that are in dispute.

under section 15-1509(c) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1509(c) (West 2012)) because title to the property had already been transferred to HUD; (2) defendant's petition was properly dismissed or denied as a matter of law because defendant failed to establish that she had exercised due diligence in presenting her claim in the original action or in filing her section 2-1401 petition; (3) plaintiff was entitled to 9% postjudgment interest as provided for in the foreclosure judgment and as allowed under the law; and (4) the evidence in the record was sufficient to establish that the indebtedness due on the date of the sale was the exact amount that was bid by plaintiff and that the unallocated amount was attributable to additional funds that were due to plaintiff for postjudgment interest and costs.

¶ 13    As to the application of section 15-1509(c), defendant responds first that plaintiff has forfeited that assertion by failing to raise it in the trial court. Second, and in the alternative, defendant responds that even if plaintiff's assertion is not forfeited, defendant should still prevail because, although section 15-1509(c) prevents a party from contesting title, it does not prevent a party from contesting the distribution of the sale proceeds, which is what defendant is seeking to do in the instant case. As to plaintiff's due-diligence assertion, defendant responds first that due diligence was not required because her petition was in the nature of a bill of relief, and second, and in the alternative, that if due diligence was required, she presented sufficient factual information to establish that she acted diligently upon learning that she was being assessed a tax liability due to an alleged surplus generated from the sale. In making those responses, defendant notes that the trial court agreed with her and found that due diligence was not required. Defendant notes further that under the law, the due-diligence requirement may be relaxed where justice so requires.

¶ 14    The appellate court applies a *de novo* standard of review in cases in which the trial court either dismissed a section 2-1401 petition or ruled on the petition based on the pleadings alone, without an evidentiary hearing. *People v. Vincent*, 226 Ill. 2d 1, 18 (2007). As the trial court's denial of the section 2-1401 petition in the present case was made without an evidentiary hearing, we will apply a *de novo* standard of review. See *id*. In addition, to the extent that we are called upon to resolve questions of statutory interpretation in our resolution of this issue, we will consider those questions under a *de novo* standard of review as well. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 50.

¶ 15    As a preliminary matter, we must first address plaintiff's assertion on appeal that defendant's section 2-1401 petition was barred as a matter of law under section 15-1509(c) of the Mortgage Foreclosure Law (735 ILCS 5/15-1509(c) (West 2012)) because prior to the filing of the section 2-1401 petition, a deed to the property had been issued by the sheriff to HUD and had been recorded. As defendant correctly points out, however, plaintiff has forfeited that assertion by failing to raise it in the trial court proceedings. *Norway Tree Farm, Inc. v. Baugher*, 8 Ill. App. 3d 1061, 1062 (1972) ("issues, questions, points or contentions not presented in the trial court and properly preserved for review will not be considered on appeal"). Even if that assertion had not been forfeited, we would have rejected it as defendant did not seek to set aside the foreclosure judgment or the sale of the property. Defendant's only claim was as to the proceeds from the sale, a claim that was not barred by section

15-1509(c). See *First Bank & Trust Co. of O'Fallon v. King*, 311 Ill. App. 3d 1053, 1058-60 (2000) (in a mortgage foreclosure proceeding, the appellate court pointed out that under section 15-1509(c) of the Mortgage Foreclosure Law, the debtor could only claim an interest in the proceeds of the sale, not an interest in the property itself). To the extent that plaintiff relies upon *U.S. Bank National Ass'n v. Prabhakaran*, 2013 IL App (1st) 111224, in support of its assertion to the contrary, we believe that plaintiff's reliance is misplaced. Unlike defendant in the present case, the mortgagor in *Prabhakaran* sought to vacate the foreclosure decree and the order confirming sale and did not limit her claim to only an interest in the proceeds from the sale. See *Prabhakaran*, 2013 IL App (1st) 111224, ¶¶ 1, 16. Thus, we believe that the facts of *Prabhakaran* are distinguishable from the facts of the instant case.

¶ 16        As a second preliminary matter, we must also address plaintiff's claim on appeal that defendant's section 2-1401 petition was properly denied or dismissed as a matter of law because defendant failed to establish due diligence. While it is true that in general, a section 2-1401 petitioner must establish due diligence in both contesting the underlying action and in bringing the section 2-1401 petition (*Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 94 (2006)), we agree with the trial court and with defendant that due diligence is not required under the law when the section 2-1401 petition is in the nature of a bill of review (*Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 19). In reaching that conclusion, we note, however, that if due diligence had been required in this case, we would have found that defendant had satisfied that requirement. The evidence established that defendant, who apparently had no intention of contesting the foreclosure or the sale of her property, promptly filed her section 2-1401 petition after she received a tax notice from the plaintiff relating to the sheriff's sale and learned that there was a possible surplus from the sale and that she had a potential tax liability from that surplus.

¶ 17        Having determined that defendant's section 2-1401 petition was not barred by section 15-1509(c) of the Mortgage Foreclosure Law or by the due diligence requirement, we turn now to the more substantive questions raised in the issue presented. The first of which is whether plaintiff was legally entitled to collect postjudgment interest, which had allegedly accrued from the date of the foreclosure judgment to the date of the sheriff's sale.[3] Under the Mortgage Foreclosure Law, there is no specific statutory section that provides for the collection of postjudgment interest from the date of the foreclosure judgment to the date of the sheriff's sale. Postjudgment interest is not specifically referenced, or even implied, in the statutory sections that address the foreclosure judgment itself (735 ILCS 5/15-1506 (West 2012)), the sheriff or judicial sale (735 ILCS 5/15-1507 (West 2012)), the report of and confirmation of that sale (735 ILCS 5/15-1508 (West 2012)), or the application of the sale proceeds (735 ILCS 5/15-1512 (West 2012)). Postjudgment interest, however, is addressed in the statutory section on redemption (735 ILCS 5/15-1603 (West 2012)). Under that section, a person who redeems the property within the redemption period must pay postjudgment interest for the period from the date of the foreclosure judgment to the date of redemption at

---

[3]Defendant does not dispute the total amount of the interest or the interest rate but only whether plaintiff was legally entitled to collect that interest in the first place.

the contract interest rate provided for in the mortgage documents or loan agreement. 735 ILCS 5/15-1603(d)(1)(vi) (West 2012).

¶ 18    The Mortgage Foreclosure Law, however, also incorporates and includes application of the provisions of article II of the Code to the extent that those provisions are not contrary to the provisions of the Mortgage Foreclosure Law. See 735 ILCS 5/15-1107(a) (West 2012). Under article II of the Code, there is a statutory section that specifically addresses postjudgment interest. Section 2-1303 of the Code provides that "[j]udgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied." 735 ILCS 5/2-1303 (West 2012). Thus, the question in this case becomes whether the foreclosure judgment was a judgment as referenced in section 2-1303 of the Code, upon which postjudgment interest could be collected. The answer to that question, as framed by the parties' arguments in this case, is controlled by whether the judgment of foreclosure is a final and appealable judgment.

¶ 19    The general rule in Illinois is that a foreclosure judgment (and order of sale) is not a final and appealable judgment because it does not dispose of all of the issues between the parties and does not terminate the litigation. *In re Marriage of Verdung*, 126 Ill. 2d 542, 555-56 (1989); *Wells Fargo Bank, NA v. Heritage Bank of Central Illinois*, 2013 IL App (3d) 110706, ¶ 11; *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 260 (2008). Rather, it is the order confirming or approving the sale that conclusively establishes the purchaser's right to the property and gives final approval to the proposed distribution of the sale proceeds and that constitutes the final and appealable order in a foreclosure case. *Id*. That general rule, however, does not apply where the trial court has made a Rule 304(a) finding that there is no just reason to delay enforcement or appeal of the foreclosure judgment. See *id*. Under those circumstances, a judgment of foreclosure is a final and appealable judgment. *Verdung*, 126 Ill. 2d at 555-56; *Fankhauser*, 383 Ill. App. 3d at 260.

¶ 20    In the present case, the foreclosure judgment contained Rule 304(a) language and was, therefore, a final and appealable judgment. See *id*. Because there is no provision in the Mortgage Foreclosure Law barring the collection of postjudgment interest and because the Mortgage Foreclosure Law specifically incorporates article II of the Code, section 2-1303 applies and, pursuant to that section, plaintiff was entitled to collect postjudgment interest from the date of the foreclosure judgment until the date of the sale.[4] See *Carson v. Rebhan*, 294 Ill. App. 180, 182-83 (1938) (in a mortgage foreclosure case, the appellate court held

---

[4]We take no position on whether plaintiff's collection of interest from the date of the foreclosure judgment to the date of the sheriff's sale would have been proper without the addition of a Rule 304(a) finding in the foreclosure judgment, as that issue has not been presented to this court in this case. See *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 295-301 (1993) (discussing prejudgment and postjudgment interest under section 2-1303 of the Code).

that interest should have been calculated on the principal at the contract rate until the date of the foreclosure decree and at the statutory legal rate for judgments after that date); *In re Daniels*, 102 B.R. 680, 683 (Bankr. N.D. Ill. 1989) (the district court recognized that under Illinois law in a mortgage foreclosure proceeding, interest accrues at the contract rate until the judgment of foreclosure and at the statutory legal rate under section 2-1303 of the Code after that point).

¶ 21 In reaching the conclusion that plaintiff was legally entitled to collect the postjudgment interest in question, we must comment upon the case of *Standard Bank & Trust Co. v. Callaghan*, 215 Ill. App. 3d 76 (1991), a case which is heavily relied upon by defendant on appeal. Although as defendant correctly points out, the appellate court in *Standard Bank* rejected a mortgagee's claim for statutory postjudgment interest under section 2-1303 of the Code, it did so based upon a prior version of the mortgage law in Illinois, which allowed for the entering of a conditional judgment of balance due when a deficiency existed. See *Standard Bank*, 215 Ill. App. 3d at 81. According to the appellate court in that case, the conditional judgment was not considered to be a judgment for which the borrower was personally liable (a personal judgment against the borrower) but, rather, was to be interpreted as an alternative decree as to the amount the borrower had to pay to avoid a foreclosure sale of the property. See *id*. That holding has no application in the present case where neither a conditional judgment nor a deficiency is involved.

¶ 22 The other substantive question raised in the issue presented is whether plaintiff was entitled to certain postjudgment costs and advances without presenting any evidence at or prior to the time of the order confirming the sale as to what specifically those costs or advances were. We believe that under the facts of the particular case, reimbursement of plaintiff's postjudgment costs and advances was appropriate. Under section 15-1508 of the Mortgage Foreclosure Law, the order confirming the sale of foreclosed property may also approve the mortgagee's postjudgment fees and costs to the extent that they are provided for in the note and mortgage and sought by the mortgagee in the proceedings. 735 ILCS 5/15-1508(b)(1), 15-1504 (West 2012). In its complaint for foreclosure in the present case, plaintiff sought to be reimbursed for its reasonable attorney fees, costs, and advances. Plaintiff's attorney fees and its prejudgment costs and advances were included in the amount of the indebtedness listed in the foreclosure judgment. In addition, pursuant to section 15-1508 and the provisions of the foreclosure judgment, plaintiff was allowed to be reimbursed for its postjudgment costs and advances. See 735 ILCS 5/15-1508 (West 2012). The amount of the postjudgment costs and advances, although not itemized, was specifically listed in the sheriff's report and approved by the trial court when the trial court approved and confirmed the sale of the property and the disbursement of the proceeds. Thus, we find that the reimbursement of plaintiff's costs and advances from the proceeds of the sheriff's sale was proper in the present case and we reject defendant's argument to the contrary.

¶ 23                                    CONCLUSION
¶ 24 For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 25    Affirmed.

¶ 26    JUSTICE O'BRIEN, dissenting.

¶ 27    I dissent from the majority because I do not believe postjudgment interest can accrue until it is determined whether the collateral is sufficient to satisfy the debt secured by the mortgage.

¶ 28    I agree that mortgagees are entitled to postjudgment interest under section 2-1303 of the Code of Civil Procedure (735 ILCS 5/2-1303 (West 2010)). My disagreement with the majority opinion stems from the point of time when postjudgment interest may begin to accrue in this setting. Pursuant to the statute on judgment interest, interest shall be computed and charged only on the unsatisfied portion of the judgment. 735 ILCS 5/2-1303 (West 2010).

¶ 29    In a mortgage foreclosure case, there is no determination about whether there is an outstanding judgment until such time as the mortgaged property is sold in accordance with the mortgage foreclosure statute. See 735 ILCS 5/15-1508(b)(2) (West 2010) (it is the order confirming sale that may provide for a personal judgment against any party for a deficiency). Only after the sheriff's sale can it be determined whether the debt will be satisfied or whether there is some portion that remains due and owing to the mortgagee to which postjudgment interest can be applied. See *Standard Bank & Trust Co. v. Callaghan*, 215 Ill. App. 3d 76 (1991); see also *Thatch v. Missouri Pacific R.R. Co.*, 69 Ill. App. 3d 48 (1979) (a defendant should not be held responsible for a judgment and its accrued interest until the extent of that liability is settled).

¶ 30    In cases where the proceeds from the sheriff's sale of the mortgaged property do not satisfy the debt owed to the mortgagee, it is entirely appropriate to calculate postjudgment interest commencing with the date of the entry of the judgment of foreclosure. This is because the sheriff's sale has determined the fair market value of the property. See *Weiner v. Landry*, 131 Ill. App. 2d 221 (1970). If, however, the sale of the mortgaged property fully satisfies the debt, the judgment is likewise satisfied and it is inappropriate to invoke the provisions of the postjudgment interest act. That is what happened here.

¶ 31    Once the judgment for foreclosure was entered in this case, the mortgagee obtained the right to the mortgaged property, subject only to the right of redemption of the defendant (which too would have guaranteed full satisfaction of the debt to the mortgagee). Since the defendant did not redeem, the mortgagee exercised its right to sell the mortgaged property and apply the sale proceeds to the debt. In an unusual turn of events, the mortgaged property was sold for an amount that exceeded the amount of the debt. As such, there was no unsatisfied judgment owed by the defendant. Generally, when there is a default upon a debt secured by a mortgage, the lender should be made whole but not better than he or she would have been had the contract been fully performed. 55 Am. Jur. 2d *Mortgages* § 573 (2013). Because the mortgaged property was of sufficient value to make the mortgagee whole, I

would find the award of postjudgment interest inappropriate. To that end, I would reverse the judgment of the trial court and remand to the trial court for a hearing to determine the proper allocation of the proceeds from the sale of the property.