# Illinois Official Reports

## Appellate Court

***BAC Home Loans Servicing, LP v. Popa*, 2015 IL App (1st) 142053**

| | |
|---|---|
| Appellate Court Caption | BAC HOME LOANS SERVICING, LP, f/k/a Countrywide Home Loans Servicing, LP, Plaintiff-Appellee, v. MICHAEL E. POPA, LIGIA CARMEN POPA 134-60 GLENCOE CONDOMINIUM ASSOCIATION, UNKNOWN OWNERS AND NONRECORD CLAIMANTS, Defendants-Appellants. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-2053 |
| Filed | March 31, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-42494; the Hon. Darryl B. Simko, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Cody J. Cocanig, of Winston & Strawn, LLP, of Chicago, for appellants.<br><br>Stephen D. Richek, of Chicago, for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff BAC Home Loans Servicing, LP (BAC), filed a complaint to foreclose mortgage against defendants Michael Popa and Ligia Popa pursuant to the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq.* (West 2012)) in September 2010. In December 2013, the circuit court granted BAC's motion for summary judgment and in June 2014, the circuit court granted BAC's motion for an order approving the report of sale and distribution and order for possession and eviction over Michael's objection. On appeal, defendants contend: (1) the circuit court erred by denying Michael's motion to vacate summary judgment; and (2) the circuit court erred by granting BAC's motion for an order approving the report of sale and distribution and an order for possession and eviction. We affirm.

¶ 2    In September 2010, BAC filed its complaint to foreclose mortgage against defendants and the 134-60 Glencoe Condominium Association (Condo Association), unknown owners, and nonrecord claimants. In the complaint, BAC alleged as follows: on November 20, 2007, defendants, as the mortgagors, executed a mortgage in the amount of $180,000 to Mortgage Electronic Registration Systems, Inc. (MERS), "as nominee for Countrywide Bank, FSB," for the property commonly known as 148 Green Bay Road, unit 2, in Glencoe, Illinois (Property). BAC further alleged that it was the legal holder of the mortgage and note and that defendants were in default for not making the monthly payments beginning in May 2010 through the present. BAC requested that a judgment of foreclosure and sale be entered against defendants.

¶ 3    Copies of the mortgage and note were attached to the complaint. The mortgage defined defendants as the borrowers, Countrywide Bank, FSB, as the lender, and MERS as the mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns." The mortgage was signed by both defendants, notarized on November 20, 2007, and recorded with the Cook County recorder of deeds on November 28, 2007.

¶ 4    According to the affidavit of the special process server, Ligia was served with summons and a copy of the complaint on October 12, 2010, and Michael was served by substitute service through Ligia on the same day.

¶ 5    On February 1, 2012, BAC filed a motion for order of default against defendants and the Condo Association and a motion for judgment for foreclosure and sale.

¶ 6    On March 9, 2012, Joel S. Alpert, as an attorney, filed his appearance on defendants' behalf and defendants' answer and affirmative defenses in response to BAC's complaint.

¶ 7    On March 15, 2012, BAC filed a motion for summary judgment, arguing that the responsive pleading filed by defendants failed to raise a genuine issue of material fact and that the pleadings on file and the affidavits submitted by BAC entitled BAC to judgment as a matter of law. BAC also responded to defendants' affirmative defenses, arguing that they were unsupported and conclusory and therefore "completely insufficient to establish the existence of an issue of material fact." Attached to the motion was an assignment of mortgage, which stated that MERS, "as nominee for Countrywide Bank, FSB, its successors and/or assigns," did thereby "assign, transfer, convey without warranties and without recourse; set over and deliver" to BAC, its successors and assigns, the mortgage on the Property prior to September 15, 2010. The assignment was notarized on September 24, 2010, and recorded with the Cook County recorder of deeds on October 4, 2010.

¶ 8    On November 25, 2013, BAC filed a motion for judgment for foreclosure and sale, as well as a notice of motion for its motions for summary judgment and for judgment of foreclosure and sale (first notice). The notice stated that on December 17, 2013, BAC's counsel would appear before the judge in courtroom 2806 at the Daley Center and would move for an entry of an order of summary judgment, default, and judgment of foreclosure and sale. The notice also indicated that it had been mailed to defendants at the Property with proper postage prepaid.

¶ 9    On December 5, 2013, BAC filed a second notice of motion for its motions for summary judgment, judgment of foreclosure and sale (second notice). The second notice stated that on December 17, 2013, BAC's counsel would appear before the judge in courtroom 2806 at the Daley Center at 9:30 a.m. and would move for an entry of an order of summary judgment, default, and judgment of foreclosure and sale. The notice also indicated that on December 5, 2013, the notice was mailed to defendants at the Property with proper postage prepaid.

¶ 10    On December 17, 2013, the circuit court entered: an order of summary judgment in favor of BAC and against defendants; an order of default against the Condo Association, which also dismissed unknown owners and nonrecord claimants as parties; and a judgment for foreclosure and sale in the amount of $233,608.16, which included the principal, accrued interest, advances, and other amounts due to BAC ($215,808.46), additional interest accrued from July 11, 2012 to December 17, 2013 at the rate of $27.72 per diem ($14,487.70), cost of the suit ($937) and attorney fees ($2,375).

¶ 11    On December 27, 2013, Leading Legal LLC filed its appearance on behalf of Michael and also filed a motion to vacate the summary judgment order pursuant to section 2-1301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301 (West 2012)). In it, Michael alleged that notice for the motion for summary judgment, default, and judgment of foreclosure and sale were sent to defendants, but not to Joel Alpert, "who was the Attorney of record in the case despite being suspended." Michael further alleged that the envelope in which the notice was sent was too large for his mailbox and he was "advised by the post office to come and pick it up on 12/18/13." Michael argued that notice had not been sent properly and was not received by the parties and, as a result, asked the court to enter an order vacating the summary judgment order.

¶ 12    On January 10, 2014, the circuit court denied Michael's motion.

¶ 13    On April 1, 2014, BAC filed a motion for order approving the report of sale and distribution and for possession. In it, BAC indicated that the property was sold on March 19, 2014, for $239,009.89. Attached to the motion was the report of sale, which noted: the amount due under the judgment ($233,608.16); the interest thereon calculated from the date the judgment of foreclosure was entered, December 17, 2013, through the date of sale, March 19, 2014, at 9% per annum ($5,245.50); publication costs ($575); and postjudgment advances not included in the judgment, including tax ($2,476.92), property preservation ($202), and mortgage insurance ($173.22).

¶ 14    On April 2, 2014, Leading Legal LLC filed its appearance on behalf of Ligia and also filed a motion to vacate the default judgment, which the circuit court denied on April 25, 2014, because an order for summary judgment, not default, had been entered against her.

¶ 15    On May 20, 2014, Michael filed a response in opposition to BAC's motion for an order approving the report of sale, arguing that the motion to confirm sale should be denied because BAC included taxes which it was not entitled to recover in the report of sale and that BAC improperly calculated the postjudgment interest rate in the report of sale at the rate pursuant to

section 2-1303 of the Code (735 ILCS 5/2-1303 (West 2012)) instead of at the rate of interest pursuant to the note.

¶ 16    On June 17, 2014, the circuit court granted BAC's motion for an order approving the report of sale and distribution and confirming the sale and order of possession (confirmation of sale).

¶ 17    On appeal, defendants first argue that the circuit court erred in denying Michael's motion to vacate summary judgment. Specifically, defendants contend that the circuit court's denial of Michael's motion was in error because they were denied due process where: the notice of the motion was not sent to the attorney of record, Joel Alpert; the notice did not indicate whether it was mailed first class; and the notice was too large for defendants' mailbox, requiring Michael to retrieve it from the post office.

¶ 18    We review the question of whether a court properly denied a motion to vacate for an abuse of discretion. *Standard Bank & Trust Co. v. Madonia*, 2011 IL App (1st) 103516, ¶ 8; see also *Deutsche Bank National v. Burtley*, 371 Ill. App. 3d 1, 5-6 (2006) (finding that a *de novo* standard of review did not apply because the case "involves a motion to vacate, not a motion to dismiss or a motion for summary judgment"). An abuse of discretion exists only where the circuit court "committed an error of law or where no reasonable person would take the view adopted by the court." *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18.

¶ 19    In the present case, defendants are essentially arguing that BAC improperly served them with the notice of motion. Cook County Circuit Court Rule 2.1(c)(i) (Aug. 21, 2000) provides that notice of a motion hearing "shall be given in the manner and to the persons described in Supreme Court Rule 11." It further provides: "If notice is given by mail, the notice shall be deposited in a United States Post Office or Post Office Box on or before the fifth (5th) court day preceding the hearing of the motion." *Id.* Illinois Supreme Court Rule 11(a) (eff. July 1, 2013) states that if a party is represented by an attorney of record, service shall be made upon the attorney, and otherwise, service shall be made upon the party. In addition, Supreme Court Rule 11(b)(3) provides that documents shall be served "by depositing them in a United States post office or post office box, enclosed in an envelope, plainly addressed to the attorney at the attorney's business address, or to the party at the party's business address or residence, with postage fully prepaid." Ill. S. Ct. R. 11(b)(3).

¶ 20    BAC sent two notices of its summary judgment motion to defendants. Both notices were addressed to defendants at the property and indicated that the summary judgment motion would be heard on December 17, 2013, before Judge Darryl B. Simko, in courtroom 2806 at the Daley Center. Both notices also stated that the notice of motion was served by "mailing a copy to the above-titled addresses and depositing same in the U.S. mail." Although the first notice did not provide the time of the hearing or the date on which the notice was mailed, any defects were cured by the second notice, which further specified that the motion would be heard at 9:30 a.m. and that the notice was put in the mail at 5 p.m. on December 5, 2013, "with proper postage prepaid." In addition, the second notice was mailed more than five days before the hearing on the motion.

¶ 21    Defendants argue that the notice should have been mailed to Joel Alpert, the attorney of record. However, in his motion to vacate summary judgment, Michael also acknowledged that their attorney was suspended from the practice of law. The Illinois Attorney Registration and

Disciplinary Commission records, of which we may take judicial notice,[1] indicate that Joel S. Alpert was suspended from the practice of law for two years beginning on June 12, 2013,[2] almost six months before the second notice was sent. It is well established that an attorney who has been suspended from the practice of law may not represent a party. See Ill. S. Ct. R. 764(b), (c)(2) (eff. Aug. 27, 1990) (requiring an attorney who has been suspended for six months or more to "cause the removal of any indicia of the disciplined attorney as lawyer, counsellor at law, legal assistant, legal clerk, or similar title" and to inform clients that "the disciplined attorney may not continue to represent them during the period of discipline"). Therefore, BAC's notice of its motion for summary judgment strictly complied with both Cook County Circuit Court Rule 2.1(c)(i) and Supreme Court Rule 11.

¶ 22    Defendants also claim that they did not receive timely notice of the motion. However, " '[t]here is a presumption of delivery if sent by regular mail directed to a proper address. Where the rules provide for that method of service, notice is thus satisfied by use of regular mail.' " *CitiMortgage, Inc. v. Lewis*, 2014 IL App (1st) 131272, ¶ 39 (quoting *In re Marriage of Betts*, 159 Ill. App. 3d 327, 332 (1987)). In addition:

"Service is complete when all the required acts are done. So, if all that the statute requires is done, it is immaterial that defendant in fact receives no actual notice thereof; and the fact that he does not thereafter personally receive the papers which were so served or that he receives them at a later date ordinarily does not affect the validity of the service. [Citation.]" (Internal quotation marks omitted.) *Lewis*, 2014 IL App (1st) 131272, ¶ 39.

¶ 23    Here, BAC mailed the notice in compliance with the rules and, therefore, properly served defendants. The fact that defendants did not personally receive the notice until after the hearing does not invalidate the service.

¶ 24    To the extent defendants have otherwise argued that they have been denied procedural due process, they have failed to provide reasoned argument or citation to pertinent authority in support of their arguments. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). Furthermore, defendants have not explained how the few cases they have cited support their arguments and, regardless, we find the cases to be distinguishable. See *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413 (1990); *In re Estate of Gustafson*, 268 Ill. App. 3d 404 (1994); *Welch v. Ro-Mark, Inc.*, 79 Ill. App. 3d 652 (1979). Accordingly, under these circumstances, we conclude that defendants' procedural due process rights were not violated and that the circuit court did not abuse its discretion in denying Michael's motion to vacate.

¶ 25    Defendants next contend that the circuit court erred by entering the confirmation of sale, arguing that BAC included taxes that it was not entitled to recover in the report of sale and that BAC was only entitled to the note rate of interest, 6.5%, rather than the rate of interest pursuant to section 2-1303 of the Code, 9%, before the court confirmed the sale.

---

[1]See *Bank of America, N.A. v. Kulesza*, 2014 IL App (1st) 132075, ¶ 21 (observing that an appellate court "may take judicial notice of readily verifiable facts if doing so will aid in the efficient disposition of a case" (internal quotation marks omitted)).

[2]See http://iardc.org/lawyersearch.asp (last visited Mar. 18, 2015).

¶ 26    "Under the Foreclosure Law, after a judicial sale and a motion to confirm the sale has been filed, the court's discretion to vacate the sale is governed by the mandatory provisions of section 15-1508(b)." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 18. In addition, our supreme court observed:

> "Pursuant to section 15-1508(b), upon motion and notice, the court *shall* confirm the sale unless the court finds that: (i) proper notice of the sale was not given; (ii) the terms of the sale were unconscionable; (iii) the sale was conducted fraudulently; or (iv) justice was otherwise not done." (Emphasis in original.) *Id*. (citing 735 ILCS 5/15-1508(b) (West 2010)).

Once a motion to confirm has been filed, "it is not sufficient under section 15-1508(b)(iv) to merely raise a meritorious defense to the complaint." *McCluskey*, 2013 IL 115469, ¶ 26. A circuit court's decision to grant a motion to confirm a judicial sale under the Foreclosure Law will not be disturbed absent an abuse of discretion. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008).

¶ 27    Here, defendants have failed to establish, or even reference, any of the four grounds enumerated in section 15-1508(b) and do not even argue the circuit court abused its discretion in confirming the sale. Instead, in support of their claim that the circuit court erred in confirming the sale, defendants argue that BAC included taxes that it was not entitled to recover in the report of sale. However, defendants have provided no citation to authority or any reasoned argument in support of their contentions. See Ill. S. Ct. R. 341(h)(7). "Mere contentions, without argument or citation of authority, do not merit consideration on appeal and are [forfeited]." *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 207 (2007). The appellate court is "not a depository in which the burden of argument and research may be dumped." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 80. Therefore, we find defendants' argument, as it relates to taxes advanced by BAC, is forfeited.

¶ 28    Defendants also argue that the circuit court erred in confirming the sale because BAC was not entitled to the statutory interest rate until after the circuit court confirmed the sale. Defendants cite only two cases in support and again provide essentially no reasoned argument. See *CitiMortgage, Inc. v. Sharlow*, 2014 IL App (3d) 130107; *Longo v. Global Auto Recycling, Inc.*, 318 Ill. App. 3d 1028 (2001). Pursuant to Supreme Court Rule 341(h)(7), we could find this argument to be forfeited as well. However, because defendants did cite cases in support and BAC responded to the argument in their response brief, we will address this contention. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 437 (2008) (forfeiture presents limitations on the parties, not on reviewing courts).

¶ 29    In *Sharlow*, the court considered whether the plaintiff mortgagor was legally entitled to postjudgment interest, which had accrued from the date of the foreclosure judgment to the date of the sheriff's sale. 2014 IL App (3d) 130107, ¶ 17. There, the plaintiff mortgagor obtained a judgment of foreclosure and an order of sale of property owned by the defendant after the defendant failed to appear and as a result was defaulted. *Id*. ¶ 3. Subsequently, the property was sold at a sheriff's sale and the circuit court entered an order confirming the sale, finding no surplus or deficiency from the sale. The circuit court's order also included Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) language finding that there was no just reason to delay enforcement or appeal of the order. *Sharlow*, 2014 IL App (3d) 130107, ¶¶ 4-5. Twenty-two months after the sale was confirmed, the defendant filed a petition pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2010)), seeking to modify the order confirming the

sale. *Sharlow*, 2014 IL App (3d) 130107, ¶ 6. In it, she argued that the sheriff's sale had actually resulted in a surplus of over $10,000 and the order confirming the sale incorrectly stated that there was no surplus or deficiency. *Id*. The plaintiff responded that the unallocated discrepancy in the amount from the sale was attributable to accrued interest and additional postjudgment costs to which plaintiff was entitled. *Id*. ¶ 7. After a hearing, the court denied the petition. *Id*. ¶ 9.

¶ 30   On appeal the defendant argued, in part, that the circuit court erred in finding there was no surplus from the sheriff's sale and that her petition should have been granted "because the unallocated amount in the sheriff's report *** could not have been attributed to plaintiff's postjudgment interest *** since postjudgment interest was not allowable under the law." *Id*. ¶ 11. The court noted that under the Foreclosure Law, "there is no specific statutory section that provides for the collection of postjudgment interest from the date of the foreclosure judgment to the date of the sheriff's sale." *Id*. ¶ 17. The court further explained:

> "The Mortgage Foreclosure Law, however, also incorporates and includes application of the provisions of article II of the Code to the extent that those provisions are not contrary to the provisions of the Mortgage Foreclosure Law. See 735 ILCS 5/15-1107(a) (West 2012). Under article II of the Code, there is a statutory section that specifically addresses postjudgment interest. Section 2-1303 of the Code provides that '[j]udgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied.' 735 ILCS 5/2-1303 (West 2012). Thus, the question in this case becomes whether the foreclosure judgment was a judgment as referenced in section 2-1303 of the Code, upon which postjudgment interest could be collected. The answer to that question, *as framed by the parties' arguments in this case*, is controlled by whether the judgment of foreclosure is a final and appealable judgment." (Emphasis added.) *Sharlow*, 2014 IL App (3d) 130107, ¶ 18.

The court noted that, generally, the rule in Illinois is that a foreclosure judgment is not a final and appealable judgment and that, instead, the order confirming or approving the sale constitutes a final and appealable order in a foreclosure case. *Id*. ¶ 19. Ultimately, the court found that because in that case the judgment of foreclosure included Rule 304(a) language, it was a final and appealable judgment, and therefore the plaintiff was entitled to collect postjudgment interest from the date of the foreclosure judgment until the date of sale. *Id*. ¶ 20.

¶ 31   We find that *Sharlow* is inapplicable to the present case. First, the *Sharlow* court specifically noted that the defendant did not dispute the interest rate but only whether the plaintiff was legally entitled to interest in the first place. *Id*. ¶ 17 n.3. In addition, the court stated that it was not taking a position on whether the plaintiff's collection of interest from the date of the foreclosure judgment to the date of the sheriff's sale would have been proper without the addition of a Rule 304(a) finding in the foreclosure judgment. *Id*. ¶ 20 n.4.

¶ 32   The other case cited by defendants, *Longo*, is factually distinguishable. *Longo* involved, in pertinent part, the question of whether the plaintiff attorney was entitled to postjudgment interest after receiving a breach of contract judgment against a former client. *Longo*, 318 Ill. App. 3d at 1039. Here, the question is when the statutory rate begins to accrue in a foreclosure action.

¶ 33   To determine whether BAC was entitled to interest at the statutory rate at the time the foreclosure judgment was entered, we must look to the language of the statute. "The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature."

*Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). The language of the statute is the best indication of the legislature's intent and must be given its plain and ordinary meaning. *Id*. at 553. If the language is unambiguous, the statute must be given effect without the use of other aids of construction. *Id*. We cannot "depart from the plain language of the statute by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Id*. at 567-68.

¶ 34    Section 15-1220 of the Foreclosure Law defines the "statutory judgment rate" as "the rate of interest on judgments specified in Section 2-1303 of the Code." 735 ILCS 5/15-1220 (West 2012). Section 2-1303 of the Code provides that "[j]udgments recovered in any court shall draw interest at the rate of 9% per annum from the date of judgment until satisfied." 735 ILCS 5/2-1303 (West 2012). Notably, section 2-1303 does not specify that the judgment must be final and appealable; rather, it refers only to judgments "recovered in any court."

¶ 35    Section 15-1504(e) of the Foreclosure Law is titled "Pleadings and service" and provides the form for a foreclosure complaint and what the statements contained in a complaint are "deemed and construed" to mean. 735 ILCS 5/15-1504(e) (West 2012). Section 15-1504(e)(3) specifically states that a plaintiff's request for foreclosure is deemed and construed to mean that plaintiff requests:

> "[I]n default of such payment in accordance with the judgment, the mortgaged real estate be sold as directed by the court, to satisfy the amount due to the plaintiff as set forth in the judgment, together with the interest thereon at the statutory judgment rate from the date of the judgment[.]" 735 ILCS 5/15-1504(e)(3) (West 2012).

The legislature's use of the word "judgment" in this section clearly refers to the foreclosure judgment, which includes the total amount due to a plaintiff from the defendant before the property has been sold, not the order confirming the sale, which has been interpreted as the final judgment for the purposes of an appeal (see *Wells Fargo Bank, NA v. Heritage Bank of Central Illinois*, 2013 IL App (3d) 110706, ¶ 11 (the confirmation of sale is the final and appealable order in a foreclosure action)). Accordingly, the Foreclosure Law clearly provides for the plaintiff's recovery of interest at the statutory rate after the foreclosure judgment has been entered and before the confirmation of sale. This reading of the statute is reinforced by the language in a different subsection of section 15-1504. Section 15-1504(d) provides that a statement in the complaint that a plaintiff is requesting attorney fees, costs, and expenses, is deemed and construed to include allegations that:

> "[U]nder the terms of the mortgage, all such advances, costs, attorneys' fees and other fees, *** are made a lien upon the mortgaged real estate and the plaintiff is entitled to recover all such advances, costs, attorneys' fees, *** together with interest on all advances *at the rate provided in the mortgage, or, if no rate is provided therein, at the statutory judgment rate*, from the date on which such advances are made[.]" (Emphasis added.) 735 ILCS 5/15-1504(d)(3) (West 2012).

By its plain language, section 15-1504(d)(3) provides for the possibility that, if the mortgage provides an interest rate for the advancement of fees and costs associated with the filing of a foreclosure complaint, that interest rate will be used if the plaintiff requests reimbursement for the fees and costs. Section 15-1504(e)(3) has no such language. It is a general rule of statutory interpretation that the legislature intends different results where it uses certain words in one instance and different words in another. *Board of Education of Park Forest Heights School District No. 163 v. State Teacher Certification Board*, 363 Ill. App. 3d 433, 444 (2006). Therefore, if the legislature intended that the mortgage interest rate would apply after a

judgment of foreclosure had been entered, as opposed to the statutory interest rate, the language of the statute would reflect that intent. Read together with section 2-1303, we conclude that section 15-1504(e)(3) of the Foreclosure Law, by its language, provides that a plaintiff is entitled to the statutory interest rate from the date of the foreclosure judgment.

¶ 36 Furthermore, Illinois courts have long held that, upon the entry of a foreclosure judgment, the mortgage merges into the judgment and eliminates the contract, and therefore the judgment is controlled by statute, not the contract. *Aldrich v. Sharp*, 4 Ill. 260, 263 (1841); see also *Poilevey v. Spivack*, 368 Ill. App. 3d 412, 414 (2006) (observing that the "merger doctrine" provides that when a judgment is obtained based on a contract, the contract "becomes entirely merged into the judgment" and the contract "ceases to bind the parties to its execution"); *Carson v. Rebhan*, 294 Ill. App. 180, 183 (1938) (concluding that the interest should have been calculated at the statutory rate after the date of the foreclosure decree, "it then becoming in effect a judgment"). Taking this principle into consideration along with the language of the Foreclosure Law, we conclude that the proper interest rate was provided for in the report of sale and the circuit court did not abuse its discretion in confirming the sale.

¶ 37 Finally, we note that although an incorrect calculation is not a reason to vacate the confirmation of sale order (see 735 ILCS 5/15-1508(b) (West 2012)), if the interest rate had been calculated incorrectly, we would not hesitate to remand the case, directing the circuit court to correct the amount of the judgment. However, here the circuit court correctly applied the statutory interest rate and, accordingly, did not abuse its discretion.

¶ 38 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 39 Affirmed.