# Illinois Official Reports

## Appellate Court

---

**Seiden Law Group, P.C. v. Segal, 2021 IL App (1st) 200877**

---

| | |
|---|---|
| Appellate Court Caption | SEIDEN LAW GROUP, P.C., as Successor-in-Interest to Seiden Netzky Law Group, LLC, Plaintiff-Appellant, v. JOY SEGAL, Defendant-Appellee. |
| District & No. | First District, Third Division No. 1-20-0877 |
| Filed | November 10, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-L-8352; the Hon. Diane M. Shelley, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Brooke L. Stevens and Mark A. Cisek, of Seiden Law Group, P.C., of Chicago, for appellant. |
| | Richard J. Prendergast, Deirdre A. Close, Brian C. Prendergast, and David C. Rivelli, of Richard J. Prendergast, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion. Justice McBride concurred in the judgment and opinion. Presiding Justice Gordon specially concurred, with opinion. |

**OPINION**

¶ 1       Seiden Law Group, P.C., as successor-in-interest to Seiden Netzky Law Group, LLC (Seiden Law), represented Joy Segal (Segal) in federal court pursuant to a contingency-fee agreement. There was a blank in the agreement where the percentage recovery was supposed to written in, but no one from Seiden Law filled in the blank with a percentage. During the midst of Seiden Law's representation, Segal discharged the law firm, who later demanded payment based the value of services it provided to her. Segal did not pay, so Seiden Law sued her for *quantum meruit* and unjust enrichment in the circuit court. On Segal's motion to dismiss, the circuit court dismissed Seiden Law's amended complaint with prejudice pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2020)), finding that, despite the omitted percentage recovery, the written agreement was enforceable and the agreement dictated that Seiden Law was to receive no compensation upon being discharged, thus precluding the law firm's claims for *quantum meruit* and unjust enrichment. On appeal, Seiden Law contends that the circuit court erred in dismissing its amended complaint where, regardless of the enforceability of the engagement agreement, it was entitled to pursue compensation under its claims for *quantum meruit* and unjust enrichment. For the reasons that follow, we reverse the circuit court's dismissal and remand the matter for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3       In 2004, a federal jury convicted Segal's then-husband, Michael Segal, of racketeering for conduct involving his insurance brokerage company. As part of his sentence, a federal district court ordered him to forfeit millions of dollars in personal assets. Around this time, Segal and her husband divorced, and pursuant to their marital dissolution agreement, Segal was awarded her share of the marital estate. Although the United States government never charged Segal with any wrongdoing, it seized and restrained significant amounts of assets that she alleged belonged to her as part of the divorce decree. As such, she filed a claim to obtain those assets, and in 2010, she settled her claim with the United States government, which allowed her to obtain some of the confiscated assets. The settlement also gave Segal the contingent right to assert an interest in the remaining seized assets if they were ultimately released by the government, not ordered forfeited, and not claimed by the government at the completion of all forfeiture proceedings. Ultimately, her ex-husband was able to satisfy the forfeiture judgment against him in full through his own assets.

¶ 4       As a result, in April 2013, Segal retained Seiden Law to represent her in connection with her efforts to obtain the property still in the possession of the United States government in which she claimed a right. In the engagement agreement signed by Seiden Law and Segal, paragraph 4 was titled "Fee for Services Performed" and stated: "___ % of recovered funds, if recovered, now in the control of the United States through the United States Attorney, pursuant to a forfeiture resulting from a matter concerning Michael Segal." The engagement agreement did not include an actual percentage in this paragraph. Paragraph 5 was titled "Expense Reimbursement" and required Segal to reimburse Seiden Law for the costs and expenses incurred in connection with her representation. Paragraph 6 provided that the parties' attorney-client relationship may be terminated by either party "at any time." The paragraph further stated that "[t]ermination will not affect [Segal's] obligation to pay for accrued fees, as

provided in Paragraph 4, to reimburse the expenses as provided in Paragraph 5, or to indemnify [Seiden Law]." The engagement agreement contained an attached document titled "Information for Clients." This document stated, in part, that "[t]he following information explains the client service practices and billing procedures that apply to your account (unless you have reached a different written understanding with us)." One topic of this document included information on the "[b]asis for fees," which noted that "[l]egal services rendered by [Seiden Law] are generally charged at hourly rates."

¶ 5 After retaining Seiden Law, the law firm filed multiple motions in federal district court on Segal's behalf, including a June 2013 motion requesting the court to refund and release property seized by the United States government to satisfy the claims against her ex-husband and an October 2013 motion for an accounting of assets.[1] Seiden Law also filed a document containing its final written argument on Segal's two pending motions. However, in November 2013, the federal district court denied the two motions. Additionally, in August 2014, Seiden Law filed a motion on Segal's behalf for another accounting of assets, an evidentiary hearing, and a distribution of assets. Later in the month, the federal district court denied the motion without prejudice, allowing the motion to potentially be renewed once the pending appeals of Segal's ex-husband were resolved.

¶ 6 In early 2016, Segal discharged Seiden Law, and in February 2016, Seiden Law moved the federal district court, and was granted leave, to withdraw as Segal's counsel. In May 2019, Glenn Seiden of Seiden Law sent Segal a letter, demanding payment of $98,655.50 in attorney fees based on the value of services the firm provided to her while representing her in the federal court case.

¶ 7 Two months later, after not receiving any payment from Segal, Seiden Law sued her in the circuit court. In March 2020, Seiden Law filed its operative first amended complaint. According to Seiden Law, its representation of Segal in federal court necessitated several time-consuming and in-depth legal tasks, including the filing of multiple motions. Seiden Law acknowledged that, when Segal discharged the law firm, she had not prevailed in her quest to obtain her claimed assets. However, the firm alleged that, upon information and belief, it was still possible for her to prevail on the claims for which Seiden Law represented her in the underlying litigation.

¶ 8 In count I of its amended complaint, Seiden Law brought a cause of action for *quantum meruit*. In this count, it asserted that no enforceable contract for services existed between the parties because the engagement agreement failed to include the percentage of Segal's recovery to be paid to the law firm as its attorney fees, which was an essential and certain term needed to create an enforceable contract. As such, Seiden Law claimed it was entitled to the reasonable value of services that it provided to Segal. In count II, Seiden Law brought a claim for unjust enrichment. In this count, it asserted that the law firm did not represent Segal gratuitously, to which she understood and agreed. Seiden Law stated that Segal retained the benefit of valuable legal services to its detriment, and the retention of that benefit was unjust. Seiden Law alleged that it provided Segal $98,655.50 in unpaid legal services, and in both counts, it sought that

---

[1]Although some of the information about these motions are contained in the record on appeal, we have reviewed the federal court docket to obtain additional information, a source of which we can take judicial notice. *Taylor v. Huntley*, 2020 IL App (3d) 180195, ¶ 12.

amount as damages plus costs and interest. Seiden Law attached to its amended complaint the engagement agreement signed by both parties and the demand letter the law firm sent Segal.

¶ 9    In response to Seiden Law's amended complaint, Segal filed a motion to dismiss pursuant to section 2-619.1 of the Code (*id.* § 2-619.1), wherein she asserted that the parties agreed to a contingency-fee contract that did not require her to pay Seiden Law any fees for its services unless there was a recovery. Segal highlighted that Seiden Law had not prevailed in any of the motions it filed in federal court yet was still demanding to be paid based on prevailing hourly rates, a term that was not included anywhere in the engagement agreement. Under section 2-615 of the Code (*id.* § 2-615), Segal argued that Seiden Law's amended complaint should be dismissed because there could be no claim for *quantum meruit* or unjust enrichment where Seiden Law's amended complaint pled the existence of a contract. Under section 2-619 of the Code (*id.* § 2-619), Segal argued that Seiden Law's amended complaint should be dismissed because the engagement agreement, which was attached to the amended complaint, did not provide for any right to attorney fees unless the law firm succeeded in pursuing Segal's claims, which it had not done. Segal attached to her motion multiple notifications of docket entries from the federal district court proceedings, which showed that Seiden Law had been unsuccessful in the motions it filed on her behalf.

¶ 10    Seiden Law responded to Segal's motion, arguing that, because there was no enforceable agreement between the parties and no dispute legal services were rendered to her, the law firm was entitled to recover the value of the services it provided to her under the principles of *quantum meruit* and unjust enrichment. Furthermore, Seiden Law posited that, even if there was an enforceable contingency-fee agreement between the parties, as Segal had argued, her act of discharging the law firm resulted in the agreement ceasing to exist. And, in turn, Seiden Law asserted that it was entitled to recover the value of the services it provided to her under the principles of *quantum meruit* and unjust enrichment. According to Seiden Law, regardless of if there was an enforceable contingency-fee agreement between the parties, the law firm was entitled to recover for the services it provided to Segal.

¶ 11    In July 2020, the circuit court entered an order on Segal's motion to dismiss. The court observed that the parties' contingency-fee agreement lacked a percentage recovery as the attorney fees but found the omission did not render the agreement unenforceable because courts have implied missing contract terms in other cases, such as in marital-settlement disputes. As such, the court found the agreement between the parties was enforceable. After observing that Segal did not obtain a recovery in her federal court proceedings while Seiden Law represented her, the court noted that, generally when a client discharges an attorney working under a contingency-fee contract, the contract ceases to exist. However, the court asserted that this general rule did not apply when the parties include a provision in the contract setting out what the attorney was entitled to after being discharged. The court determined that paragraph 6 of the parties' contingency-fee agreement was such a provision and that, based on it, Seiden Law was not entitled to pursue its claims for *quantum meruit* and unjust enrichment. According to the court, because the engagement agreement was an affirmative matter that barred recovery, it granted Segal's motion to dismiss with prejudice pursuant to section 2-619 of the Code (*id.*).

¶ 12    Thereafter, Seiden Law appealed the circuit court's dismissal order.

## II. ANALYSIS

Seiden Law contends that the circuit court erred in dismissing its amended complaint where, if the parties' engagement agreement was enforceable despite the omitted percentage recovery, the agreement ceased to exist once Segal discharged the law firm and, thus, under Illinois law, it was entitled to be compensated according to *quantum meruit* principles. Alternatively, Seiden Law posits that, if the parties' engagement agreement was unenforceable due to the omitted percentage recovery, the law firm would be allowed to bring quasi-contractual claims of *quantum meruit* and unjust enrichment to be compensated for the legal services it provided to Segal. According to Seiden Law, regardless of the enforceability of the engagement agreement, the end result should be the same that it was entitled to be compensated for the reasonable value of the services it provided to Segal.

Under section 2-619.1 of the Code (*id.* § 2-619.1), a party may combine a section 2-615 motion to dismiss (*id.* § 2-615) with a section 2-619 motion to dismiss (*id.* § 2-619). *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 32. A motion to dismiss brought under section 2-615 challenges the legal sufficiency of a complaint by alleging defects apparent on its face. *In re Estate of Powell*, 2014 IL 115997, ¶ 12. A dismissal is proper under section 2-615 only when "it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* In contrast, a motion to dismiss brought under section 2-619 admits the legal sufficiency of the complaint but asserts that certain external defects or defenses defeat the claims therein. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. When reviewing either type of motion to dismiss, the circuit court must accept all well-pled facts in the complaint as true, as well as any reasonable inferences from those facts. *In re Estate of Powell*, 2014 IL 115997, ¶ 12; *Sandholm*, 2012 IL 111443, ¶ 55. In addition, the pleadings must be viewed in the light most favorable to the nonmoving party. *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 23-24 (2004). When the plaintiff attaches an instrument, such as a contract, to a pleading, that instrument becomes part of the pleading for purposes of any motion based upon the pleadings. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 431 (2004). We review a dismissal pursuant to section 2-615 or section 2-619 *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

The threshold question in this case, as the circuit court observed, was whether there was an enforceable contingency-fee agreement between Seiden Law and Segal despite the percentage recovery being omitted from agreement.

In order for a contract to exist, there must be an offer, acceptance, and consideration. *Halloran v. Dickerson*, 287 Ill. App. 3d 857, 867-68 (1997). To make a contract enforceable, "the agreement must also be sufficiently definite so that its terms are reasonably certain and able to be determined." *Id.* at 868. In other words, the agreement's provisions must enable the court to determine what exactly the parties have agreed to. *Universal Scrap Metals, Inc. v. J. Sandman & Sons, Inc.*, 337 Ill. App. 3d 501, 504-05 (2003). One such critical term is the price, and it "must be sufficiently definite or capable of being ascertained from the parties' contract." *Crestview Builders, Inc. v. Noggle Family Ltd. Partnership*, 352 Ill. App. 3d 1182, 1185 (2004). But "[a] contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991). As the circuit court noted, where terms of a contract are missing, the court may supply that missing term. See Restatement

(Second) of Contracts § 204 (1981) ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court."); see also *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 91 (citing the Restatement (Second) of Contracts for contract law principles).

¶ 18    Illinois courts have supplied a reasonable price or cost term into a contract when missing, resulting in an incomplete contract being enforceable. For instance, in *In re Marriage of Schmidt*, 292 Ill. App. 3d 229, 232 (1997), a case on which the circuit court relied, a dissolution of marriage judgment required the father to contribute one-half of the college expenses for his daughter. Although the daughter chose to attend a private school, the circuit court concluded that the college-expenses provision of the dissolution of marriage judgment did not require the father to pay one-half of *any* college, but rather one-half of the *reasonable* college expenses, which the court determined to be the expenses for an in-state school. *Id.* at 233-34. The appellate court affirmed the circuit court's conclusion, finding where an agreement "is silent as to price or another, more specific method of determining price," a court can imply a "reasonable" price. *Id.* at 237. Additionally, Illinois's Uniform Commercial Code allows for open price terms in instances where a contract for sale fails to include a price, and in such cases, "the price is a reasonable price at the time for delivery." 810 ILCS 5/2-305(1)(a) (West 2020). As such, when the Uniform Commercial Code "controls contract interpretations in Illinois," the "courts may imply reasonable contract terms for the parties." *Ryan v. Wersi Electronics GmbH & Co.*, 3 F.3d 174, 180 (7th Cir. 1993).

¶ 19    Although neither party has pointed us to a decision where a court has supplied a missing percentage recovery in a contingency-fee agreement, as occurred in this case, Illinois courts are always scrutinizing the reasonableness of attorney fees (see *Joiner v. SVM Management, LLC*, 2020 IL 124671, ¶ 52) and, more specifically, the reasonableness of contingency-fee agreements. *Pocius v. Halvorsen*, 30 Ill. 2d 73, 83 (1963); see also *In re Estate of Kelso*, 2018 IL App (3d) 170161, ¶ 16 ("Courts have the authority to scrutinize contingency fee agreements to ensure that they are reasonable and do not result in the collection of an excessive fee."). " 'In all cases where an award of attorney fees is appropriate, only those fees which are reasonable will be allowed, the determination of which is left to the *sound discretion* of the trial court.' " (Emphasis in original.) *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 595-96 (2000) (quoting *Mars v. Priester*, 205 Ill. App. 3d 1060, 1064-65 (1990)).

¶ 20    In certain areas of law, there are undoubtedly industry standards for contingency fees. See 735 ILCS 5/2-1114(a) (West 2020) (precluding contingency-fee agreements in medical malpractice cases from exceeding 33.3% of all sums recovered). However, that statute obviously does not preclude contingency fees well below 33.3%, and in many circumstances, such a standard fee could overcompensate or undercompensate an attorney for his or her services. As a result, contingency fees ranging from 25% to even 40% have been found reasonable based on the nature of the representation and type of legal services provided. See *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 37 (25% contingency fee for the savings from a proposed special assessment by a city was not unreasonable); *Premier Networks, Inc. v. Stadheim & Grear, Ltd.*, 395 Ill. App. 3d 629, 634 (2009) (40% contingency fee for all future income derived from the licensing and enforcement of several patents was not unreasonable); *In re Estate of Weeks*, 255 Ill. App. 3d 945, 948 (1994) (33.3% contingency fee for settlement in a personal injury action on behalf of a minor was not unreasonable). In a

specialized case like the instant one, involving the recovery of assets seized by the United States government, the percentage recovery could easily vary between attorneys. As such, contrary to the circuit court's findings, we cannot agree that a court could simply supply the missing percentage recovery in the contingency-fee agreement.

¶ 21 Additionally, the circuit court's conclusion that the missing percentage recovery was not fatal to the enforceability of Seiden Law's contingency-fee agreement overlooks the American Bar Association's Model Rules of Professional Conduct (ABA Model Rules) and the Illinois Rules of Professional Conduct of 2010 (Rules of Professional Conduct), an issue neither party has raised. Because the underlying representation by Seiden Law of Segal occurred in federal court in the Northern District of Illinois, the applicable federal rules of professional responsibility would apply to their engagement agreement. *In re Synder*, 472 U.S. 634, 645 n.6 (1985). Rule 83.50 of the Local Rules of the United States District Court Northern District of Illinois states that:

> "Applicable disciplinary rules are the Model Rules adopted by the American Bar Association. On any matter not addressed by the ABA Model Rules or for which the ABA Model Rules are inconsistent with the Rules of Professional Conduct, a lawyer admitted to practice in Illinois is governed by the Illinois Rules of Professional Conduct, as adopted by the Illinois Supreme Court, and a lawyer not admitted to practice in Illinois is bound by the Rules of Professional Conduct for the state in which the lawyer's principal office is located." U.S. Dist. Ct., N.D. Ill., R. 83.50 (May 23, 2014).[2]

The ABA Model Rules and the Rules of Professional Conduct contain an identical rule governing contingency-fee agreements, which is unsurprising given that the Rules of Professional Conduct were modeled after the ABA Model Rules. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 179 (1997). Rule 1.5(c) of both rules provide that a contingency-fee agreement must be in writing, signed by the client, and "shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal." Model Rules of Prof'l Conduct R. 1.5(c) (Am. Bar Ass'n 1983); Ill. R. Prof'l Conduct (2010) R. 1.5(c) (eff. Jan. 1, 2010).

¶ 22 Because the Northern District of Illinois's local rules specifically note that the Rules of Professional Conduct take precedence over the ABA Model Rules when there is a conflict, Illinois law interpreting and applying Rule 1.5(c) should govern the parties' contingency-fee agreement. To this end, Rule 1.5(c) is not a suggestion or aspirational (*Camelot, Inc. v. Burke Burns & Pinelli, Ltd.*, 2021 IL App (2d) 200208, ¶ 47), but rather, it is mandatory with no exceptions. *In re Spak*, 188 Ill. 2d 53, 67 (1999). The rule has the force and effect of law. *Camelot*, 2021 IL App (2d) 200208, ¶ 47. Rule 1.5(c) "authorizes contingent fees, except in certain circumstances, and lays out the procedures that *must* be followed when an attorney charges a client on a contingent fee basis." (Emphasis added.) *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 23. In *In re Spak*, 188 Ill. 2d at 67, our supreme court

---

[2]We may take judicial notice that the attorneys who represented Segal in the underlying federal case (Glenn Seiden, Theodore P. Netzky, and Brooke Laurine Lewis) were all admitted to practice in Illinois. See *BAC Home Loans Servicing, LP v. Popa*, 2015 IL App (1st) 142053, ¶ 21 (asserting that we may take judicial notice of records from the Illinois Attorney Registration and Disciplinary Commission).

highlighted the potential abuses when an attorney fails to follow Rule 1.5(c) and remarked that an attorney may not "wait to reduce a contingent fee to writing until after the work is done and the attorney is in possession of the proceeds of litigation." The court explained that "[a] client in such a situation may be left with the unenviable choice of agreeing with his attorney's recollection of the fee agreement, or delaying receipt of his money pending resolution of a fee dispute. The inequality of bargaining power between the attorney and client in such a case is readily apparent." *Id.* Given the potential for such unjust situations, Rule 1.5 is intended to protect a client's rights even at the expense of an attorney's remedies. *Richards v. SSM Health Care, Inc.*, 311 Ill. App. 3d 560, 564 (2000).

¶ 23   In the instant case, because the requirements provided in Rule 1.5(c) are mandatory, Seiden Law's omission of the percentage recovery in the parties' contingency-fee agreement resulted in the agreement violating the rule. Although Seiden Law violated Rule 1.5(c), that does not necessarily mean its engagement agreement with Segal was unenforceable as a matter of law. See *American Home Assurance Co. v. Golomb*, 239 Ill. App. 3d 37, 42 (1992) (asserting that not every violation of rules of professional responsibility "justifies the voiding of a contract"). But here, because Rule 1.5(c) makes the percentage recovery an indispensable part of a contingency-fee contract and the concerns that our supreme court highlighted in *In re Spak*, 188 Ill. 2d at 67, namely putting the client in an impossible dilemma in recovering his or her proceeds from litigation, the omission of the percentage recovery renders the agreement unenforceable from its onset. Consequently, in this case, the parties' engagement agreement was unenforceable.

¶ 24   The circuit court's mistaken belief that the missing percentage recovery in the contingency-fee agreement was not fatal to its enforceability renders its decision with regard to the *quantum meruit* count in error. It is well established that a party may bring a *quantum meruit* claim when there is not a valid and enforceable contract. *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 8-9 (2004). Because we have found that the missing percentage recovery was fatal to the contingency-fee agreement's enforceability and, thus, there was not a valid and enforceable agreement between the parties, the court erred by dismissing Seiden Law's *quantum meruit* count with prejudice pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)). A complaint should be dismissed with prejudice under section 2-619 "only if it is apparent that the plaintiff can prove no set of facts that will entitle him or her to recover." *Bruss v. Przybylo*, 385 Ill. App. 3d 399, 405 (2008). In other words, because Seiden Law's contingency-fee agreement is unenforceable, it is not apparent that Seiden Law can prove no set of facts that would entitle it to relief under a claim for *quantum meruit*.

¶ 25   Having found the parties' agreement unenforceable, we next must decide how that impacts Seiden Law's claims for a recovery based on *quantum meruit* and unjust enrichment, two quasi-contractual claims that are based on contracts implied in law. *Stark Excavating, Inc. v. Carter Construction Services, Inc.*, 2012 IL App (4th) 110357, ¶ 37. Generally, when an express contract does not govern the relationship between a client and attorney, courts "will generally find an implied promise to pay reasonable compensation for services rendered by the attorney to the person sought to be charged under the theory of *quantum meruit*." *Rubin & Norris, LLC v. Panzarella*, 2016 IL App (1st) 141315, ¶ 36. This is because "[a]n attorney who renders professional services has a right to be compensated for such services." *Id.*

¶ 26   Recently, this court observed that, "where the underlying contract is unenforceable as a matter of public policy, the plaintiff will not be aided in circumventing the contract by

recovering under the equitable theory of *quantum meruit.*" *Kane v. Option Care Enterprises, Inc.*, 2021 IL App (1st) 200666, ¶ 45.[3] In that case, this court affirmed the circuit court's finding that a contingency-fee contract between a company and an attorney-lobbyist was unenforceable as a matter of public policy because the agreement violated section 8 of the Lobbyist Registration Act (25 ILCS 170/8 (West 2014)), which prohibited contingency-fee agreements in lobbying contacts. *Kane*, 2021 IL App (1st) 200666, ¶¶ 8, 39. This court also affirmed the circuit court's finding that, because the enforcement of the agreement was barred as a matter of public policy, the attorney could not recover compensation under *quantum meruit* principles. *Id.* ¶¶ 8, 48-49. In reaching this holding, this court relied upon multiple decisions, including *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 358, 366 (1997), and *Practice Management Ltd. v. Schwartz*, 256 Ill. App. 3d 949, 953-55 (1993), which both held that, when contracts are unenforceable as a matter of public policy, the party to whom compensation is owed under the contract cannot collect compensation under *quantum meruit* principles.

¶ 27    As noted by *Kane*, 2021 IL App (1st) 200666, ¶ 45, the critical issue is whether the underlying agreement violated public policy, and thus, only when agreements are deemed unenforceable as a matter of public policy is a recovery under *quantum meruit* barred. See *Much Shelist Freed Denenberg & Ament, P.C. v. Lison*, 297 Ill. App. 3d 375, 381 (1998) ("The cases involving unenforceable agreements *** do not bar *quantum meruit* recovery whenever an ethical rule is not followed unless it involves public policy."). To this end, other decisions have allowed attorneys to recover under *quantum meruit* even though their conduct violated the Rules of Professional Conduct as well as various statutory provisions about engagement agreements and attorney fees because the underlying agreements did not violate public policy. See *id.* at 382 (holding that, although a law firm did not obtain its client's signature on a contingency-fee agreement in violation of Rule 1.5(c), its lapse "was not sufficiently serious to taint plaintiff's lawsuit for *quantum meruit* recovery"); *Valenti v. Swanson*, 294 Ill. App. 3d 492, 495-96 (1998) (allowing an attorney to obtain compensation under *quantum meruit* principles even though he failed to comply with section 1 of the Personal Injury Representation Agreement Act (815 ILCS 640/1 (West 1996)), which required attorneys in certain personal injury matters to provide their clients a copy of the statute); *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 1006 (1995) (allowing attorney to obtain compensation under *quantum meruit* principles even though his contingency-fee agreement allowed for a percentage recovery that was higher than the maximum allowed by statute without court approval).

¶ 28    In the instant case, although Seiden Law's engagement agreement with Segal violated Rule 1.5(c), there is not a scintilla of evidence in the record that Seiden Law's omission of the percentage recovery from its engagement agreement was anything but an innocuous oversight on its part. Courts are reluctant to declare a contract void as a matter of public policy. *Kane*, 2021 IL App (1st) 200666, ¶ 9. A contract will violate public policy only if the contract "has a tendency to injure the public welfare." *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989). This is not a case, like what occurred in *Kane*, 2021 IL App (1st) 200666, ¶ 46, where the subject matter of the engagement agreement violated public policy, rather this

---

[3]Due to this case being published on September 8, 2021, it has not been released for publication in the permanent law reports, and until it is released, it is subject to revision or withdrawal.

appears to be carelessness and sloppy contract formation. See *O'Hara*, 127 Ill. 2d at 341-42 (stating that whether a contract is contrary to public policy depends on the egregiousness of the particular conduct, which is based on the specific facts and circumstances of each case). Therefore, Seiden Law's violation of Rule 1.5(c) did not render its engagement agreement unenforceable as a matter of public policy, and Seiden Law is entitled to pursue compensation under the principles of *quantum meruit*. See *Lison*, 297 Ill. App. 3d at 382. Consequently, we must reverse the circuit court's dismissal of Seiden Law's claim for *quantum meruit*.

¶ 29 However, merely because we have held that Seiden Law should be allowed to pursue its *quantum meruit* claim, that does not mean it is entitled to all, or even any, of the compensation it has requested from Segal in its amended complaint upon remand. *Quantum meruit* is an equitable remedy (*Weydert Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 522 (2009)), which allows the circuit court to use its broad discretion in arriving at what it determines to be the reasonable value of the discharged attorney's services. *Will v. Northwestern University*, 378 Ill. App. 3d 280, 304 (2007). The doctrine of *quantum meruit* allows the circuit court to award an attorney " 'as much as he deserves' " for representing a client. *Lee v. Ingalls Memorial Hospital*, 232 Ill. App. 3d 475, 478 (1992) (quoting *Van C. Argiris & Co. v. FMC Corp.*, 144 Ill. App. 3d 750, 753 (1986)). And as much as the attorney deserves is the reasonable value of his services during the representation of his client, which the attorney has the burden to prove and the court will determine after considering several factors, including the benefit the attorney's work has conferred upon the client. *In re Estate of Callahan*, 144 Ill. 2d 32, 41, 43-44 (1991).

¶ 30 Further on remand, Segal may bring a new motion to dismiss if, for example, Seiden Law's amended complaint only alleged conclusory allegations without a sufficient factual basis under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). Considering this was Seiden Law's first amended complaint, it is possible that motion practice will continue. We are not opining on the validity of the complaint to survive any attacks based upon the sufficiency of the allegations, only that Seiden Law's claim for *quantum meruit* should not have been dismissed with prejudice pursuant to section 2-619 of the Code (*id.* § 2-619). Ultimately, upon remand, if Seiden Law's case survives motion practice, the circuit court will have broad discretion in determining if Seiden Law has met its burden to prove that $98,655.50 was a reasonable value of its services to Segal based on the benefits received by Segal during the period in which the law firm was employed. *In re Estate of Callahan*, 144 Ill. 2d at 41.

¶ 31 Although Seiden Law's claim for *quantum meruit* may not be dismissed with prejudice under section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)), we still must decide the fate of its claim for unjust enrichment. To sustain a claim for unjust enrichment, the plaintiff must allege " '(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law.' " *Sherman v. Ryan*, 392 Ill. App. 3d 712, 734 (2009) (quoting *Jackson National Life Insurance Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999)). A claim for *quantum meruit* and unjust enrichment are similar because "*[q]uantum meruit* is used as an equitable remedy to provide restitution for unjust enrichment." *Weydert Homes*, 395 Ill. App. 3d at 522. And they both apply where no contract exists to dictate compensation. *Hayes Mechanical*, 351 Ill. App. 3d at 8-9. The critical difference between the two theories of recovery is the calculation of damages. *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 61. "In a *quantum meruit* action, the measure of recovery is the reasonable value of work and material

provided, whereas in an unjust enrichment action, the inquiry focuses on the benefit received and retained as a result of the improvement provided ***." *Hayes Mechanical*, 351 Ill. App. 3d at 9. Because the theories both are intended to prevent unjust enrichment, albeit with slightly different damages measures, the same result that occurred with Seiden Law's *quantum meruit* claim should occur with its unjust enrichment claim. Consequently, we must reverse the circuit court's dismissal with prejudice of Seiden Law's claim for unjust enrichment under section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)).

¶ 32                                    III. CONCLUSION

¶ 33     For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for further proceedings.

¶ 34     Reversed and remanded.

¶ 35     PRESIDING JUSTICE GORDON, specially concurring:

¶ 36     I agree with the majority's well-reasoned opinion but I must write separately on the issue of giving leave to plaintiff to file an amended complaint to pursue its cause of action for *quantum meruit* and unjust enrichment. First, I observe that plaintiff's complaint alleges conclusory allegations and does not allege any facts explaining what value defendant received or what benefit plaintiff's legal services provided. In its complaint, plaintiff merely alleges that "Joy Segal received value from [the plaintiff's] services." This conclusory allegation is insufficient to state a cause of action for *quantum meruit. Roti v. Roti*, 364 Ill. App. 3d 191, 201 (2006).

¶ 37     Second, prior to being discharged in early 2016, plaintiff recovered no monies from the government for his client. It is undisputed that the parties agreed to some type of a contingent fee agreement, which generally contemplates that plaintiff is only entitled to its fee if defendant recovers during the attorney-client relationship. See *In re Estate of Callahan*, 144 Ill. 2d 32 (1991).

¶ 38     However, even if the attorney-client agreement was enforceable, plaintiff may not have been entitled to legal fees. Paragraph 5 of the engagement agreement was titled "Expense Reimbursement" and required Segal to reimburse Seiden Law for the costs and expenses incurred in connection with her representation. Paragraph 6 provided that the parties' attorney-client relationship may be terminated by either party "at any time." The paragraph further stated that "[t]ermination will not affect [Segal's] obligation to pay for accrued fees, as provided in Paragraph 4, to reimburse the expenses as provided in Paragraph 5, or to indemnify [Seiden Law]." The engagement agreement contained an attached document titled "Information for Clients." This document stated, in part, that "[t]he following information explains the client service practices and billing procedures that apply to your account (unless you have reached a different written understanding with us)." One topic of this document included information on the "[b]asis for fees," which noted that "[l]egal services rendered by [Seiden Law] are generally charged at hourly rates."

¶ 39     I would interpret this clause to mean if defendant later recovers as a result of legal work performed by plaintiff, the fees charged would be recoverable at the firm's hourly rate. Thus,

the only way plaintiff can state a cause of action is if it alleges and proves that defendant recovered monies at least partly based on plaintiff's efforts.

¶ 40 However, we have a unique case before us in that the written agreement became unenforceable, and when a client terminates a contingent-fee contract, the contract ceases to exist between the parties thereto and the contingency term, whether the attorney wins, is no longer operative. One of the factors to be considered in measuring the value of the services received is the benefits that have resulted to the client from the attorney's representation during the period in which the attorney was employed. *Mireles v. Indiana Harbor Belt R.R. Corp.*, 154 Ill. App. 3d 547 (1987). The value of on attorney's services is not measured by the result attained by another person.