2024 IL App (1st) 221000-U

FIFTH DIVISION
July 12, 2024

No. 1-22-1000

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JANET BEDIN, Individually and as Special Administrator of the Estate of Dolores Bedin, Deceased, | ) ) ) | |
| Plaintiff-Appellant, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | No. 13 L 13639 |
| KYLE MUELLER, NORTHWESTERN SURGICAL ASSOCIATES, ELISABETH WALLNER, and NORTHWESTERN MEMORIAL HOSPITAL, | ) ) ) ) | Honorable Allen Walker, Judge Presiding. |
| Defendants, | ) ) | |
| (O'Connor Law Group, LLC, Appellee). | ) | |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**O R D E R**

¶ 1  *Held*: Order granting appellee attorney fees and costs pursuant to a theory of *quantum meruit* is affirmed where the circuit court found appellee's failure to comply with Rule 1.5(c) of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof'l Conduct R. 1.5(c) (eff. Jan. 1, 2010)) is not an adequate bar to compensation; the circuit court further did not abuse its discretion in calculating fees or costs.

¶ 2  Plaintiff Janet Bedin (Ms. Bedin) appeals the decision of the circuit court awarding attorney

fees and expenses to O'Connor Law Group, LLC (OLG), arising from the settlement of an underlying medical malpractice case. In that case, OLG represented Ms. Bedin in her capacity as special administrator of her mother's estate. OLG neglected to have Ms. Bedin sign a written retainer agreement. The circuit court awarded both fees, which totaled 30% of the total settlement, and costs pursuant to a theory of *quantum meruit*. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Dolores Bedin (Dolores) died in August 2011 from pancreatic cancer. The Circuit Court of Winnebago County appointed her daughter, Ms. Bedin, as the executor of Dolores's estate. Ms. Bedin has one brother, Alexander Bedin (Alexander).

¶ 5      Between December 2010 and August 2012, Ms. Bedin (or her mother initially) retained three separate law firms, one after the other, to file a medical malpractice case in relation to the diagnosis and treatment of Dolores's illness. In each agreement, Ms. Bedin or Dolores agreed to pay a one-third contingent fee and expenses.

¶ 6      In August 2012, the third firm filed a complaint in the Circuit Court of Cook County. The complaint alleged that Kyle Mueller, M.D., Northwestern Surgical Associates, Elisabeth Wallner M.D., and Northwestern Memorial hospital (collectively, defendants) were responsible both for Dolores's wrongful death and for negligence under the Illinois Survival Act (755 ILCS 5/27-6 (West 2012)).

¶ 7      In June 2015, the fourth firm, OLG, the appellee in this case, filed an appearance. In July, it substituted for the previous firm.

¶ 8      In litigating the underlying action, OLG filed two amended complaints, partially defeated a motion to strike portions of the second amended complaint, and defended against at least three motions for partial summary judgment. It retained five experts, deposed over 20 witnesses, and

participated in mediation. According to a table of litigation expenses submitted by OLG, litigation costs totaled $90,283.90, primarily arising from expert depositions and expert retainer fees.

¶ 9    In October 2017, an attorney from OLG sent Ms. Bedin a letter to an address in Rockford, Illinois. The letter begins, "Because it is so difficult to get ahold of you, and because it is almost impossible to set a meeting with you so that you actually show up, I am notifying you of several things." The letter goes on, "Of course, you never paid any of my expenses which you promised on so many occasions, but at this point, I have given up on that, so we will just work on the 1/3 contingent fee." The letter concludes, "We also need your New York City address for client contact purposes."

¶ 10    On October 31, 2017, the case was assigned to Judge Allen Price Walker. Judge Walker's award of fees and costs became enmeshed in the parties' settlement of the medical malpractice claims, so we set out these events together

¶ 11    On December 27, 2017, the parties participated in a mediation. Following the mediation, defendants offered to settle the malpractice case for $550,000. OLG agreed to this amount on Ms. Bedin's behalf via email, though she was not part of the email thread. It then sent notice of its attorney's lien to Dr. Mueller's and Dr. Wallner's insurer's attorney.

¶ 12    On January 22, 2018, OLG sent Ms. Bedin an email advising her to set up a trust to protect funds from the settlement that would be distributed to Ms. Bedin's brother, Alexander, who, according to the email, was disabled and would, absent a trust, lose much of the proceeds to Medicare. In the email, OLG also asked Ms. Bedin to "[c]all [OLG] to discuss all this sometime TODAY." Ms. Bedin responded saying she would call in 30 minutes.

¶ 13    Near the end of the workday, OLG emailed Ms. Bedin again saying,

"Jan, I haven't heard from you as promised. I don't know what your intentions are.

*** And, so we are clear, if you are balking at my fees, I need to know that also. If I charge you by the hour, which I can do, the fees would be greater than the reduced amount I am proposing."

¶ 14 After the workday, Ms. Bedin responded saying she would call in 15 minutes. In its brief, OLG states that Ms. Bedin did not call.

¶ 15 On January 24, 2018, individual defendant Elisabeth Wallner, M.D., filed a motion to enforce the previously agreed settlement and obtain dismissal.

¶ 16 At the hearing to review the reported settlement, Judge Walker considered both Dr. Wallner's motion and a separate motion, filed by OLG, titled "Plaintiff's Petition To Approve Wrongful Death Settlement and Proposed Distribution." The motion included a request for fees and costs. There is no transcript in the record of this hearing, but in its brief, OLG represents that it orally advised the circuit court that Ms. Bedin objected to the payment of expenses and that she wanted to consult another attorney. The circuit court continued the matter.

¶ 17 On January 29, 2018, Judge Walker dismissed the case with prejudice in light of the settlement. According to OLG's brief, the court also contacted OLG and told it to remove a few minor expenses from a list of costs. OLG then submitted an amended petition with the requested expenses removed. OLG also added language to the amended petition noting that Ms. Bedin "will no longer cooperate in final resolution, [and OLG therefore] requests [the] Court to approve settlement and proposed distribution as set forth." OLG further stated that it agreed with Ms. Bedin to reduce its contingent award from one-third to 30%.

¶ 18 On January 31, the circuit court granted an order approving the settlement and finding that OLG and Ms. Bedin "entered into an agreement" for a 30% contingent fee in the amount of $165,000. The court also approved the distribution of $90,283.90 for fair and reasonable expenses.

It retained jurisdiction for purposes of enforcing the settlement and adjudicating any liens. Lastly, the settlement was made subject to approval of the probate division of the Circuit Court of Winnebago County.

¶ 19    A hearing for status on the execution of the settlement release and enforcement was continued three times until it was finally held on March 23, 2018. According to the transcript of that hearing, Ms. Bedin arrived late. Before her arrival, an OLG attorney stated, "Judge, I feel awful that we're wasting the Court's time I apologize to counsel here, as well. And if we continue this until Monday, [Ms. Bedin] might not be on time *** again. So I just want to put that out there."

¶ 20    The court delayed the hearing until Ms. Bedin arrived. When the hearing began, Ms. Bedin expressed concern over whether the settlement would release defendants from liability in a separate action. She also stated that she was concerned about "the distribution of fees and expenses." She requested a continuance to have time to consult with a separate attorney. The court admonished Ms. Bedin, stating that she already had time to consult a separate attorney during the previous continuances.

¶ 21    OLG then articulated its position that the complaint was filed on behalf of Dolores's estate, of which Ms. Bedin was only an administrator and agent of the court. As such, and considering Ms. Bedin's brother who stood to benefit, the court had authority to act in the best interest of the estate and enforce the settlement whether Ms. Bedin signed the release or not. Ms. Bedin asserted that concern for her brother was the reason that she wanted time to consult with an attorney.

¶ 22    At that hearing, OLG conceded that it did not have a written agreement with Ms. Bedin. It argued that it was instead "essentially [a] third-party beneficiary" of the agreements between Ms. Bedin and the previous firms. Ms. Bedin protested, asserting that she did not know that the costs had reached over $90,000. OLG contended that it had sent Ms. Bedin numerous emails and oral

communications keeping her informed of the costs.

¶ 23    During the hearing, the court allowed Ms. Bedin to call Darlene Soderberg, an attorney who, over the phone, represented to the court that she was licensed to practice law in Illinois. The court explained the background of the dispute between OLG and Ms. Bedin and told Ms. Soderberg that, in the absence of an agreement, reasonable fees could still accrue to OLG based on *quantum meruit*. The court added that it did not believe the fees would be "substantially different" based on *quantum meruit* rather than a written agreement. The two would "come out to be pretty close." The court did not, therefore, see a reason it would not sign the release on behalf of Dolores's estate.

¶ 24    The transcript records that a conversation between Ms. Bedin and Ms. Soderberg was had off record, after which the court asked Ms. Bedin if she was going to sign the release. Ms. Bedin did not respond affirmatively. At that point, the court announced that it would sign the release on behalf of the estate.

¶ 25    On March 28, 2018, Ms. Bedin filed an unsigned *pro se* "Emergency Motion In Opposition To The Proposed Distribution ***" and a separate "Emergency Motion In Opposition To The Full Release ***." In these, Ms. Bedin argued that costs should be deducted from OLG's fees. She stated "[T]he only dispute that exists between Janet Bedin and Attorney O'Connor is in regard to whether expenses are to be paid out of the contingency fee of $165,000." She further argued that the settlement contained multiple inaccuracies including that the release asserted that it was signed on behalf of Ms. Bedin.

¶ 26    The circuit court denied both of Ms. Bedin's motions. It instead directed the parties to revise the release to add language specifying that the court would sign pursuant to *Will v. Northwestern University*, 378 Ill. App. 3d 280 (2007), a case in which we affirmed the circuit

court's actions preventing a plaintiff from rejecting a settlement in a wrongful death suit that benefited the estate.

¶ 27     On April 6, 2018, OLG filed a motion titled "Plaintiff's Motion To Execute Settlement Release And Enforce Settlement." In the motion, OLG stated that it "believe[d] that Janet Bedin [would] never execute the Settlement Release," she was "simply not capable of making reasoned decisions about this litigation," and the interests of Alexander and Ms. Bedin were "at odds at this point."

¶ 28     On April 9, 2018, the circuit court, defendants, and OLG executed the settlement. On April 25, 2018, the probate court in Winnebago County approved the settlement. It later entered an order directing distribution of funds to OLG for partial reimbursement of litigation expenses (Distribution Order).

¶ 29     Ms. Bedin filed a motion in Winnebago County to reconsider the Distribution Order. Ms. Bedin also filed a motion in the Circuit Court of Cook County to reconsider the court's April 9 order approving execution of the settlement agreement. She argued in that motion that OLG should receive roughly half of the original amount of calculated expenses, $45,000, as reimbursement for costs, in addition to its $165,000 contingent fee. The Cook County circuit court denied the motion.

¶ 30     On June 4, 2018, OLG filed a motion in Cook County to enforce an attorney's lien. It sought an order directing defendants to issue three checks—one to Ms. Bedin, one to Dolores's estate, and one to OLG directly. The circuit court granted the motion.

¶ 31     On July 20, 2018, Ms. Bedin filed a notice of appeal in Cook County objecting to the following six circuit court orders: (1) the January 31 order approving settlement; (2) the March 23 order granting motions to enforce the settlement and finding that OLG's proposed attorney fees and litigation expenses were reasonable; (3) the March 28 order denying Ms. Bedin's emergency

7

motions in opposition to the full release and settlement; (4) the April 9 order approving execution of the settlement agreement; (5) the May 30 order denying Ms. Bedin's motion to reconsider; and (6) the June 20 order directing defendants to re-issue settlement drafts in the name of OLG and enforce OLG's attorney's lien.

¶ 32    In a summary order, we dismissed Ms. Bedin's July 20 appeal as premature on the basis that Ms. Bedin's motion to reconsider the Winnebago County court's Distribution Order rendered the Circuit Court of Cook County's ruling—which was subject to approval by the Winnebago County probate court—neither final nor appealable. *Bedin v. Mueller*, No. 1-18-1556 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 33    The probate court in Winnebago County entered a final order on June 2, 2022. Ms. Bedin then filed a new notice of appeal.

¶ 34                                    II. JURISDICTION

¶ 35    Ms. Bedin appeals the circuit court's award of fees and expenses initially entered on January 31, 2018, and made contingent upon approval by the probate court of Winnebago County administering Delores's estate. The action in Winnebago County was not finalized until June 2, 2022. Ms. Bedin filed a timely notice of appeal on July 5, 2022. This court has jurisdiction over the appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 36                                    III. ANALYSIS

¶ 37    On appeal, Ms. Bedin argues we should reverse the circuit court's award of both costs and fees because (1) no enforceable agreement exists between herself and OLG, (2) OLG is not a third-party beneficiary of Ms. Bedin's prior agreements with other firms, (3) the circuit court erred in raising *quantum meruit* as an alternative basis to support its award, and (4) the circuit court

failed to consider necessary factors when calculating fees based on *quantum meruit*.

¶ 38    OLG acknowledges that it had no written agreement with Ms. Bedin and has abandoned its argument that it was a beneficiary of earlier written agreements. Instead, OLG argues that the award of both fees and costs was appropriate under *quantum meruit*, the Attorneys Lien Act (730 ILCS 5/1 (West 2016)), and the common fund doctrine. OLG further argues that Ms. Bedin's concession in the circuit court that the only dispute that existed between her and the firm was "in regard to whether expenses are to be paid out of the contingency fee of $165,000" bars her from raising any objection as to the amount of the fee award. OLG lastly contends in its brief and in a separate motion to dismiss that Ms. Bedin's claims are barred by *res judicata*—based on the dismissal of a case that she and her brother initiated against OLG in Cook County and objections that she filed in the Winnebago County probate action.

¶ 39    Ms. Bedin did not file a reply brief and thus does not respond to several of these arguments. Because we find that the circuit court neither erred in awarding fees and costs based on a theory of *quantum meruit* nor abused its discretion in the amount that it calculated, we have no need to address OLG's remaining arguments.

¶ 40       A. Fees and Costs Were Properly Awarded on the Basis of *Quantum Meruit*

¶ 41    We agree with Ms. Bedin, and indeed there is no dispute, that the award of fees and costs in this case cannot be based on an enforceable agreement between the parties. Rule 1.5(c) of the Illinois Rules of Professional Conduct of 2010 (ethics code)—now Rule 1.5(d)(2) (Ill. R. Prof'l Conduct R. 1.5(d)(2) (eff. July 1, 2023)—requires attorneys to reduce contingent fee agreements to a writing "signed by the client." Ill. R. Prof'l Conduct R. 1.5(c) (eff. Jan. 1, 2010). The rule is "mandatory" and "contains no exception." *In re Spak*, 188 Ill. 2d 53, 67 (1999).

¶ 42    As the March 23 transcript makes clear, however, the existence of a purported agreement

was not the final basis on which fees were awarded. Rather, the award was based on the equitable doctrine of *quantum meruit*.

¶ 43    It is well established that a party may bring a *quantum meruit* claim where, as here, there is no valid or enforceable contract. *Seiden Law Group, P.C. v. Segal*, 2021 IL App (1st) 200877, ¶ 24. The term *quantum meruit* "literally means 'as much as he deserves.' " *Much Shelist Freed Denenberg & Ament, P.C. v. Lison*, 297 Ill. App. 3d 375, 379 (1998) (citing *First National Bank v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 365 (1997)). "In a *quantum meruit* action, the measure of recovery is the reasonable value of work and material provided." (Internal quotation marks omitted.) *Seiden*, 2021 IL App (1st) 200877, ¶ 31.

¶ 44    Ms. Bedin argues the circuit court erred in finding *quantum meruit* provided a basis for the award of fees and costs because OLG never made a claim for *quantum meruit*. Rather, the idea was initially posed by the court. She offers no support and we have found none that suggests a party must make a formal claim for *quantum meruit* to be entitled to such an award.

¶ 45    Ms. Bedin also argues that OLG is barred from such an award by its own conduct including violating the ethics code by not obtaining a signed contingency agreement, failing to disclose the lack of a signed agreement, and its poor treatment of Ms. Bedin as the client.

¶ 46    As Ms. Bedin points out, where the underlying contract is unenforceable as a matter of public policy, "the plaintiff will not be aided in circumventing the contract by recovering under the equitable theory of *quantum meruit*." (Internal quotation mark omitted.) *Seiden*, 2021 IL App (1st) 200877, ¶ 26. Thus, we must determine whether, in this case, OLG's conduct precludes any award of fees and costs based on *quantum meruit*.

¶ 47    There is a split of authority as to the standard of review we should apply to this question. In *Andrew W. Levenfeld & Associates, Ltd. v. O'Brien*, 2023 IL App (1st) 211638, ¶ 34, *appeal*

*allowed*, No. 129599 (Ill. Sep. 27, 2023), we held that "[w]hether a particular remedy is precluded as a matter of law is an issue we review *de novo*." In *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 1006-07 (1995), we applied an abuse of discretion standard, reasoning that certain factors such as an assessment of the integrity of the law firm's actions in the underlying suit may require increased deference. In this case, the standard of review does not affect the outcome. Even under a *de novo* standard, we hold that an award based on *quantum meruit* is appropriate.

¶ 48    As support for her argument that *quantum meruit* should not apply because of OLG's violation of Rule 1.5, Ms. Bedin cites *Leoris v. Dicks*, 150 Ill. App. 3d 350 (1986), *Licciardi v. Collins*, 180 Ill. App. 3d 1051 (1989), *American Home Assurance Co. v. Golomb*, 239 Ill. App. 3d 37 (1992), and *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353 (1997).

¶ 49    These cases recognize that forming illegal, unethical, and unenforceable contracts may bar a firm from obtaining attorney fees on a theory of *quantum meruit*. In *Leoris*, 150 Ill. App. 3d at 354, we held that *quantum meruit* was barred where a discharged attorney sought payment from a succeeding firm based on the percentage of the final recovery rather than the value of the work contributed. In *Licciardi*, 180 Ill. App. 3d at 1061, we denied an attorney compensation where the lawyer sought to obtain a contingent financial interest in a case involving the domestic division of marital property. In *American Home Assurance Co.*, 293 Ill. App. 3d at 44, we denied recovery in *quantum meruit* where the lawyer attempted to contract for fees exceeding statutory caps. In *First National Bank of Springfield*, 179 Ill. 2d at 366, our supreme court barred recovery based on *quantum meruit* for a witness finder firm that contracted to obtain a contingent fee for securing expert witnesses in a medical malpractice case. The supreme court held that *quantum meruit* could

not apply both because the company failed to show its activities conferred any benefit on the plaintiffs and because the underlying contract was illegal. *Id.*

¶ 50    While unethical conduct may bar recovery in *quantum meruit*, "[w]hether *quantum meruit* recovery is barred *** depend[s] on the egregiousness of the particular conduct involved." *Much Shelist Freed Denenberg & Ament, P.C.*, 297 Ill. App. 3d at 381. As we noted in *American Home Assurance Co.*, 239 Ill. Ap. 3d at 43-44, there is a difference between applying *quantum meruit* where recovery on the original contract fails due to "unintentional" errors or "minor technical deficiencies," as opposed to conduct that is best described as "[not] innocent."

¶ 51    In each of Ms. Bedin's cited cases, the attorneys entered into illegal and unethical contracts. Here, OLG's ethical violation is of a different kind. The original agreement, had it been reduced to writing, would have been enforceable. Nothing about it would have been illegal, unethical, or unusual. There is nothing in the substance of the agreement between Ms. Bedin and OLG that violates the rules of ethics.

¶ 52    The situation is similar to *Levenfeld*, 2023 IL App (1st) 211638 and *Seiden*, 2021 IL App (1st) 200877. In *Levenfeld*, two law firms violated Rule 1.5(e) of the ethics code (Ill. R. Prof'l Conduct R. 1.5(e) (eff. Jan. 1, 2010)) by failing to specify how the firms would split the contingency fee (*Levenfeld*, 2023 IL App (1st) 211638, ¶ 1). On appeal, we held that the ethical violation rendered the underlying retainer agreement unenforceable, but the firms were still entitled to an award in *quantum meruit*. *Id.* ¶ 57.

¶ 53    *Seiden*, 2021 IL App (1st) 200877, addressed whether compensation based on *quantum meruit* was appropriate where an attorney neglected to enter the number of the contingent percentage fee owed in the underlying retainer. *Id.* ¶ 4. The omission violated Rule 1.5(c) of the ethics code (*id.* ¶ 22) and rendered the agreement unenforceable (*id.* ¶ 20). The firm, however, was

able to recover in *quantum meruit* because the underlying contract's failure was more of a function of "carelessness and sloppy contract formation" rather than the type of unethical conduct that would foreclose compensation. *Id.* ¶ 28. We further noted that "courts generally find an implied promise to pay reasonable compensation for services rendered by [an] attorney" and "an attorney who renders professional services has a right to be compensated for such services." (Internal quotation marks omitted.) *Id*. ¶ 25.

¶ 54   Here, OLG's conduct is akin to that of the attorneys in *Levenfeld* and *Seiden* rather than *Leoris*, *Licciardi*, *American Home Assurance Co.*, or *First National Bank of Springfield*. Like the former cases, OLG failed to comply with Rule 1.5 of the ethics code. Both Ms. Bedin and OLG, however, operated with the understanding that OLG would be paid for its work. In failing to reduce this understanding to a signed written agreement that made it clear that Ms. Bedin would remain responsible for costs incurred, OLG's behavior violated Rule 1.5. This violation is most accurately described as careless, not duplicitous. As both *Levenfeld* and *Seiden* make clear, a violation of this sort does not rise to the level of misconduct that will foreclose remuneration.

¶ 55   Ms. Bedin argues that OLG engaged in duplicitous behavior by failing to fulfil its obligation of candor to the court. But the record does not support this claim. While OLG's initial petition to approve settlement did state that fees were owed on the basis of an agreement between Ms. Bedin and OLG, OLG readily conceded at the March 23 hearing, and in the only transcript available to us on appeal, that no agreement was ever *reduced to writing*.

¶ 56   There are no transcripts for most of the interim court hearings. So we are not sure what representations were made. It was Ms. Bedin's burden to present a sufficiently complete record to support her claim. *Chicago Title & Trust Co., Trustee Under Trust No. 89-044884 v. Chicago Tittle & Trust Co., Trustee Under Trust No. 1092636*, 248 Ill. App. 3d 1065, 1075 (1993) (citing

*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). Thus, "any doubts which may arise from the incompleteness of the record [are] resolved against the appellant." *Id.*

¶ 57    Ms. Bedin devotes significant portions of her brief describing OLG's "belittling" attitude toward her. She notes multiple interactions between herself and OLG, including the tone of OLG's October letter, its email pressuring her to accept the settlement, its colloquy with the court before her arrival on March 23, and the fact that OLG sent multiple communications to Ms. Bedin at a Rockford address, even though OLG had her email address and stated in one of its letters that it understood that she lived in New York.

¶ 58    It is clear in the record that there was a serious breakdown in the attorney-client relationship between OLG and Ms. Bedin. Nothing in OLG's conduct, however, rises to the level of unethical behavior that would support a conclusion that OLG does not deserve compensation for the benefit it undoubtedly conferred on Dolores's estate.

¶ 59    Ms. Bedin argues that, if we affirm the circuit court's decision, we will contravene *In re Spak*, 188 Ill 2d at 67. That was the case in which our supreme court held that contingent fee agreements must be put in writing, without exception, lest a client be put in the unenviable position of disagreeing with an attorney's "recollection of the fee agreement" and thereby occupy a position of unequal "bargaining power." *Id.* Our decision here follows *In re Spak* and recognizes that the unsigned fee agreement is not enforceable. *In re Spak*, however, says nothing about awarding fees in *quantum meruit* where no written agreement exists. As we recognized in both *Levenfeld* and *Seiden*, the fact that the agreement was not enforceable and violated Rule 1.5 is not a bar to an award of fees based on *quantum meruit*.

¶ 60    B. Ms. Bedin Has Forfeited Any Claim that The Circuit Court's Calculation of Fees Was

an Abuse of Discretion

¶ 61    On appeal, Ms. Bedin argues the circuit court did not have evidence upon which to calculate an award of fees based in *quantum meruit*. It instead engaged in what she describes as a "casual valuation of services to overwhelm the objection of [Attorney Soderberg] that no enforceable contract existed." She contends that the burden was on OLG to prove the value of its services based on a number of factors. See *In re Estate of Callahan,* 144 Ill. 2d. 32, 44 (1991) (citing *Mireles v. Indiana Harbor Belt R.R. Corp.*, 154 Ill. App. 3d 547, 551 (1987)) (listing relevant factors including "the skill and standing of the attorney employed, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary fee in the community, and the benefit resulting to the client.").

¶ 62    We review a circuit court's calculation of attorney fees and costs for an abuse of discretion. See *DeLapaz v. SelectBuild Construction., Inc.*, 394 Ill. App. 3d 969, 972 (2009) (on fees); *Guerrant v. Roth*, 334 Ill. App. 3d 259, 272 (2002) (on costs). "A trial court abuses its discretion if 'no reasonable person would take the view adopted by the trial court.' " *DeLapaz*, 394 Ill. App. 3d at 972 (citing *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 651 (2008)).

¶ 63    We agree with OLG that Ms. Bedin has forfeited any right to contest the amount of fees awarded by her failure to raise this issue below. As the firm notes, Ms. Bedin advised the circuit court that the only issue between the parties was the amount of costs that OLG sought to have the estate pay out of the settlement. It is well settled that arguments not raised in the circuit court are forfeited on appeal. *Bonner v. City of Chicago*, 334 Ill. App. 3d 481, 487 (2002) (citing *In re Liquidations of Reserve Insurance Co.*, 122 Ill. 2d 555, 568 (1988)).

¶ 64    Ms. Bedin's conduct may also amount to an invited error. Under the invited error doctrine,

"a party cannot complain of [an] error which that party induced the court to make or to which that party consented." *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). In this case, Ms. Bedin's advised the court that there was no dispute as to the amount of fees and certainty signaled to the circuit court that a detailed showing of the various factors that courts will consider in making a *quantum meruit* award was not necessary.

¶ 65    As OLG points out, there have also been cases in which we have upheld a *quantum meruit* award based on a percentage of recovery, rather than a calculation based on the factors listed in *Callahan*. See *Wegner v. Arnold*, 305 Ill. App. 3d 689, 693 (1999); *Will*, 378 Ill. App. 3d at 304; *DeLapaz*, 394 Ill. App. 3d at 976.

¶ 66    However, in *Levenfeld*, 2023 Il App (1st) 211638, ¶¶ 34-45, we held that a *quantum meruit* award that was the equivalent to the contingency amount of the unenforceable agreement was improper since it was indirectly enforcing an unlawful agreement. This case, however, is distinguishable from *Levenfeld.*

¶ 67    In *Levenfeld*, the parties fully litigated the issue of what amount of fees should be awarded based on *quantum meruit*. *Id.* ¶¶ 19-24. The circuit court ultimately calculated the *quantum meruit* award based on the parties' contingent fee agreement (*id.* ¶ 29) despite having evidence before it on "each of the seven factors courts consider in awarding *quantum meruit* fees" (*id.*).

¶ 68    In this case, in contrast, Ms. Bedin made no arguments in the circuit court as to the amount of fees that should be awarded. On the contrary, she advised the court that the only issue was as to the award of costs. Thus, the circuit court had no reason to elicit the kind of evidence the court had before it in *Levenfeld* and that our supreme court listed as relevant factors for an award based on *quantum meruit* in *Callahan.*

¶ 69    We also note that the fee awarded appears reasonable based on the factors listed in

16

*Callahan*. Indeed, Ms. Bedin makes no argument to the contrary, other than to point out that Judge Walker had only been assigned to the case after four years of litigation and three months before it had been set for trial. This does not, of course, suggest that Judge Walker was unaware of the history of the case or of OLG's work on it. The record includes detailed information as to OLG's efforts litigating over a roughly three-year period. As described above (see *supra* ¶ 8), those efforts were extensive. The court concluded that the percentage amount was very close to the amount that would be appropriate if the factors that are generally considered were used to calculate the fee.

¶ 70    In sum, the record fully supports the circuit court's conclusion that this was a reasonable fee and Ms. Bedin has forfeited any claim that OLG needed to further document the amount to which they would be entitled in an award based on *quantum meruit.*

¶ 71                C. The Costs Awarded Were Not an Abuse of Discretion

¶ 72    As to the costs awarded, the circuit court had ample evidence before it. OLG represents in its brief that the circuit court contacted the firm to request that it remove several minor expenses from an initial list submitted as part of its petition to approve settlement. The record reflects that OLG then removed $44.02 in expenses as part of its amended petition. The court had before it a detailed inventory of litigation costs that began in August 2015 and extended through January 2018. During the March 23 hearing, the court stated that it "reviewed" and later "re-reviewed the [costs] and [did] not find the[m] *** to be unreasonable in light that the bulk of them go to the expert." Where costs are concerned, the circuit court engaged in a thorough evidence-based evaluation.

¶ 73    On appeal, Ms. Bedin does not list any specific costs that she contends were unreasonable or should not have been awarded. Because Ms. Bedin does not contest any of the line items for which OLG seeks reimbursement, we have no basis upon which to conclude that no reasonable

17

person would agree with the circuit court's calculation.

¶ 74    Because we affirm on the basis of *quantum meruit*, we have no need to reach OLG's additional theories—whether compensation is owed based on its attorney's lien or the common fund doctrine. We also have no need to address that this appeal is barred by *res judicata.*

¶ 75                                    IV. CONCLUSION

¶ 76    For the foregoing reasons, we affirm the circuit court's orders granting an award of both fees and costs to OLG as part of its order approving settlement in the underlying medical malpractice case.

¶ 77    Affirmed.